James G. and Grace Harper v. Commissioner.
Harper v. Commissioner
Docket No. 4958-70.
United States Tax Court
T.C. Memo 1972-106; 1972 Tax Ct. Memo LEXIS 151; 31 T.C.M. (CCH) 424; T.C.M. (RIA) 72106; May 8, 1972, Filed. James G. Harper, pro se, 4098 Royal Lane, Dallas, Tex. W. John Howard, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1966, 1967, and 1968 in the amounts of $1,319.70, $1,342.29, and $1,447.68, respectively. The issue for decision is whether amounts received by petitioner James G. Harper while a candidate for a Ph.D. degree at Stanford University from Texas Instruments, Incorporated, his employer, are excludable as a scholarship or fellowship grant under section 117, I.R.C. 1954. [1]
Findings of Fact Some of the facts have been stipulated and are found accordingly. *152 Petitioners, husband and wife who resided in Dallas, Texas, at the time of the filing of their petition in this case, filed a joint Federal income tax return for the calendar year 1966 with the district director of internal revenue at Austin, Texas, a joint Federal income tax return for the calendar year 1967 with the district director of internal revenue at Dallas, Texas, and a joint Federal income tax return for the calendar year 1968 with the district director of internal revenue at San Francisco, California. James G. Harper (hereinafter referred to as petitioner) received a B.S. degree in Metallurgical Engineering from the University of California in 1956, and an M.S. degree in Metallurgy from the University of California in 1957. Petitioner has been employed by Texas Instruments, Incorporated (hereinafter referred to as TI) in Dallas, Texas since December 26, 1957, being originally employed in the research and development of new types of transistors, diodes, and integrated circuits. On November 26, 1965, TI announced in its company newspaper "Texins News", 425 that competition would formally open in December 1965 for its Ph.D. fellowship grants. The article stated that *153 eligibility for a Ph.D. fellow required the equivalent of a master's degree and 2 years active service with TI as of September 1, 1966, and that winners were chosen primarily on the basis of: "academic accomplishment, undergraduate and graduate; extent to which proposed area of study is of long-range interest to TI; contributions to TI; publications and papers; other honors and achievements; and recommendations of supervisors and appropriate associates such as branch head or professors." The article further stated that TI Ph.D. fellows are placed on leave of absence for 2 or 3 years as necessary to complete their studies, and receive a grant of $6,000 or 50 percent of their base salary (whichever is larger), with a dependent's allowance of 15 percent for their first dependent plus 5 percent for each additional dependent up to a maximum of 80 percent of their base salary. The article stated that TI pays transportation charges including moving household and personal belongings to the school location and from that location upon return to TI up to a maximum of $2,000 for each relocation. Petitioner on December 27, 1965, filed an application for a Ph.D. fellowship under the TI graduate *154 study program. In this application he stated that his career plans were "to become a key technical contributor in a product division at TI and then to progress to a position of technical management." He listed the various areas of work he had done at TI and submitted letters of recommendation from each of his supervisors at TI. In his application petitioner stated that he intended to attend Sanford University and that his filed of study would be "materials science." The final selection of Ph.D. fellows was by the Corporate Fellowship Committee of TI. Petitioner received a letter dated March 29, 1966, from the chairman of the TI Fellowship Committee informing him that the Committee had selected him for a TI fellowship "in recognition of your past accomplishments and of your promising potential for the future." He was informed that there was enclosed with the letter a "Fellowship Agreement" containing the formal details of the arrangement and that he was to return one signed copy of the agreement to signify his acceptance of the fellowship. The letter informed him that he would receive a grant, tuition, and certain relocation expenses and that his grant for the academic year would *155 be $12,336, which would be paid in installments on or about September 15 and January 15. The letter further stated that TI would arrange to have his tuition billed directy to the company, that he would be expected to purchase needed supplies, texts, and similar materials, but TI would pay for his move to and from the university area up to $2,000 for each move in accordance with the company's transfer procedure, a copy of which was enclosed with the letter. The letter informed petitioner that he would be on an educational leave of absence and that "in this employee status, your TI-paid insurance coverage, profit-sharing participation, and service recognition benefits continue unchanged." He was further informed that if he chose to continue his optional TI group insurance coverage to see his personnel director to arrange for prepayment of premiums. The letter further informed petitioner that while on leave status, income and social security taxes would be withheld from his grant, but there would be no withholding on payments of his tuition and moving expenses. In the Texins News of April 7, 1966, there was an announcement that TI Ph.D. fellowships had been awarded to 7 employees from *156 a field of 15 candidates. The article stated that the TI Ph.D. fellowship program introduced in 1961 had to date produced two new doctorates, and in addition two former Ph.D. fellows had returned to the company while completing their dissertation requirements. On April 8, 1966, petitioner executed the "TI Fellowship Agreement." Paragraph I of this agreement was denominated "Patents Agreement"and provided that the individual accepting the appointment as a TI Fellow understood and agreed that the agreement to assign inventions that he had executed upon employment at TI "shall remain in effect to the extent that it is not inconsistent with arrangements that I might be required to make in connection with part-time research while a graduate student." Paragraph II was entitled "Proprietary Information Agreement." It was to the general effect that the recipient of the TI fellowship understood that while on educational leave, his obligation with respect to TI trade secrets and proprietary information remained the same as when a full-time employee. Paragraph III entitled "Financial Agreement" stated in part: In consideration of the financial support provided to me by Texas 426 Instruments *157 Incorporated, I agree to complete one month in full-time employment at TI for each month of Fellowship support that I receive, beginning on the date of my return to full-time employment at TI from the Fellowship. If I voluntarily terminate from TI before I fulfill this obligation, I agree to pay to TI any remaining balance of the dollar amount of such support, calculated as follows: * * * I understand and agree that the balance due upon termination shall bear simple interest at six (6) percent per year from the date of my voluntary termination. * * * Petitioner enrolled in Stanford University at Palo Alto, California in September 1966. Petitioner and his family moved to California and resided in Palo Alto, California from September 1966 until sometime in 1969. While petitioner was attending Stanford University he sent informal reports of his progress to TI. These reports were in the form of letters with respect to the courses petitioner was taking, his grades, and his progress towards completion of the Ph.D. requirements. In early 1969 petitioner notified TI that he would be ready to return to work around the middle of 1969. He was sent a schedule of interviews which had been *158 arranged for him with the heads of various departments of TI in connection with the position in which he would be placed upon his return to TI. When petitioner returned to TI in August 1969, he joined the Process Technology Center of the Semi-conductor Research and Development Laboratory. Petitioner received his Ph.D. degree in Materials Science from Stanford University on October 2, 1969. Petitioner's leave of absence status in the years here in issue was in accordance with TI's standard procedure for all educational leaves of absence. As petitioner was informed in the letter offering him the TI fellowship, he was allowed to continue and did continue his medical and group life insurance programs and retained his status in the company's profit sharing plan. However, during his leave of absence no contributions were made by the company to the plan. Petitioner during his educational leave of absence retained his seniority in TI in all of its programs. While petitioner was enrolled at Stanford University during the years here in issue, he received the following gross payments, and the tax withheld and the net amount received by him were as indicated: Gross
Total
Net amount
Year
Amount
withholding
received
1966
$ 6,168.00
$ 776.28
$ 5,391.72
1967
12,336.00
1,253.21
11,082.79
1968
12,336.00
1,537.68
10,798.32
*159 In accordance with its agreement, TI paid petitioner's transportation charges incurred in movingto Palo Alto and back to Dallas when he returned to work for TI, and paid petitioner's tuition directly to Stanford University. Petitioner paid for all books, printing, publishing and any stenographic services. Petitioners on their Federal income tax returns for the calendar years 1966, 1967, and 1968 did not include in income reported the amounts paid to them by TI under the TI fellowship program. Respondent in his notice of deficiency increased petitioners' income as reported for the year 1966 by the amount of $6,168 and for each of the years 1967 and 1968 by the amount of $12,336, with the explanation that these amounts were not excludable under section 117 or any other section of the Internal Revenue Code. Opinion Section 117(a)[2] provides that the gross income of an individual does not include any amount received as a scholarship or fellowship grant. *160 Section 1.117-4(c), Income Tax Regs.[3] provides that any amount paid or allowed to an individual to enable him to pursue studies or research shall not be considered as a 427 scholarship or fellowship grant if such amount represents either compensation for past, present, or future services or represents payments to enable the recipient to pursue studies or research primarily for the benefit of the grantor. This provision of the regulations was held to be a valid interpretation and implementation of the statute in Bingler v. Johnson, 394 U.S. 741 (1969). *161 We are therefore in this case presented with the factual question of whether the amounts paid by TI to petitioner represented compensation for past, present, or future employment services or amounts allowed to petitioner to enable him to pursue studies or research primarily for the benefit of TI. Petitioner contends that since he received pay from TI at the normal salary for his level before he received the fellowship grant, and upon returning to work at TI in August 1969 again received the normal salary paid by TI for the level of training and the work he performed, the payments which he received while a student at Stanford University should not be considered to constitute compensation for past, present, or future employment services. Petitioner contends that although the work he did at Stanford was in a general way connected with his work at TI, there was not such a direct connection as to cause the payments to petitioner to be made for him to pursue studies or research primarily for the benefit of TI. Petitioner argues that he was an employee in name only while pursuing his studies at Stanford and should not be considered to have received the grant as compensation from TI. *162 Petitioner contends that there are substantial differences in the facts involved in Bingler v. Johnson, supra, and in his situation. He points out that the period of time in which the employees in Bingler v. Johnson were on leave of absence from their company was only 9 to 12 months, that the topics of their research for their doctor's dissertation were required to relate to the work of their employer and that their employer did in fact supervise their research for their doctorate program. In our view the facts in the instant case show that the payment by TI to petitioner during the years here in issue while petitioner was a student at Stanford University represent compensation for services. In order to be eligible for a TI fellowship grant, an applicant must have been employed by TI for 2 years, and the applicant's selection was based in part on his contributions to TI and the extent to which the proposed area of study was of long range interest to TI. The evidence also shows that petitioner retained many of the benefits of an employee while on an educational leave of absence from TI. Also, as a condition to receipt of the TI fellowship support, petitioner agreed to *163 return to TI and complete one month in full-time employment at TI for each month of fellowship support received, and if he failed to fulfill this obligation, to repay the amount he had received as fellowship support at 6 percent interest. The agreement to return to the employ of TI after he completed his fellowship work was quite comparable to the agreement in Bingler v. Johnson, supra, on which the Court laid great stress. Petitioner argues that the agreement to return to work for TI was no detriment to him since he wanted to return to work for TI and had no intention of not doing so. However, TI saw fit to have petitioner sign an agreement to return to work for it, which shows that TI was interested in having petitioner's services in return for the fellowship agreement. In Ussery v. United States, 296 F. 2d 582 (C.A. 5, 1961), the Court pointed out that the taxpayer's obligating himself to return to work for his employer who made him the grant to return his employer's investment in his education, carried a clear inference that the program was adopted by 428 the employer to train its employees to better perform their duties. In our view the evidence *164 as a whole in this case brings it within the holding of those cases which deny to a taxpayer an exclusion of an amount as a scholarship on the ground that the amount is a payment for past, present, or future services or an amount paid to the taxpayer for the benefit of the grantor. John E. MacDonald, Jr., 52 T.C. 386 (1969); Jerry S. Turem, 54 T.C. 1494 (1970); Lowell D. Ward, 55 T.C. 308 (1970), aff'd per curiam 449 F. 2d 766 (C.A. 8, 1971); and Lawrence A. Ehrhart, 57 T.C. - (Mar. 28, 1972). Decision will be entered for respondent. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel. (B) research (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
3. Sec. 1.117-4 Items not considered as scholarship or fellowship grants: (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of Sec. 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.