Eugene W. Helms and Norma J. Helms v. Commissioner.
Helms v. Commissioner
Docket Nos. 4548-70 and 7475-70.
United States Tax Court
T.C. Memo 1972-110; 1972 Tax Ct. Memo LEXIS 145; 31 T.C.M. (CCH) 442; T.C.M. (RIA) 72110; May 11, 1972, Filed. Eugene W. Helms, pro se, 6550 Greenwich Lane, Dallas, Tex. W. John Howard, Jr., for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income taxes for the calendar years 1966, 1967, 1968, and 1969 in the amounts of $2,069.15, $2,779.04, $3,572.92, and $2,240.46, respectively. The issue for decision is whether amounts received by petitioner Eugene W. Helms from his employer, Texas Instruments Incorporated, during an educational leave of absence while he was working on a Ph.D. degree at Stanford University constitute scholarship or fellowship grants, excludable from petitioners' gross income under section 117, I.R.C. 1954. [1]
*146 Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, who resided in Dallas, Texas at the time of the filing of their petitions in this case, filed joint Federal income tax returns for the taxable years 1966, 1967, 1968, and 1969 with the district directors of internal revenue at Austin, Texas; Dallas, Texas; San Francisco, California; and Austin, Texas, respectively. Petitioner Eugene W. Helms (hereinafter referred to as petitioner) received a B.S. degree in Electrical Engineering from Texas A&M College in 1952. He graduated with a 2.78/3.00 grade point average. In 1955 petitioner was employed by Texas Instruments Incorporated (hereinafter referred to as TI) in the Missile and Ordnance Department of the Apparatus Division. In this employment he was responsible for submission of proposals and for acquiring and performing of contract programs. From 1963 to 1966 petitioner attended Southern Methodist University in Dallas, Texas on a part-time basis under a cooperative educational program sponsored by TI. Under this program petitioner was released from his regular duties at TI for 2 full days a week to enable him to *147 attend classes. He received his full salary during the time he was attending classes under the cooperative educational program. In August 1966 petitioner received a Master of Science degree in Electrical Engineering with a 3.7/4.0 grade point average. On November 26, 1965, TI announced in its company newspaper, "Texins News," that competition would formally open December 1, 1965, for TI Ph.D. fellowships. The article stated that the offer was open only to those individuals having been employed for 2 years with TI and that in 443 order to be eligible, the applicant must have the equivalent of a Master's degree. The same article also carried an announcement of applications being taken for the cooperative educational program in which petitioner had been participating. The article stated that, as had recently been announced, the Ph.D. fellowship awards had been improved to provide a basic grant, dependent's allowance, and certain relocation expenses to the school, as well as upon the return to TI; that the Ph.D. fellows would be placed on a leave of absence for 2 to 3 years as necessary to complete their studies and receive a grant of $6,000 or 50 percent of their base salary (whichever *148 was larger), plus a dependent's allowance of 15 percent for their first dependent and 5 percent for each additional dependent up to a maximum of 80 percent of their base salary. The article stated that the winners of these fellowships were chosen primarily on the basis of academic accomplishment, undergraduate and graduate; extent to which proposed area of study was of long range interest to TI; contributions to TI; publications and papers; other honors and achievements; and recommendations of supervisors and appropriate associates such as branch heads or professors. The article stated that the final selection of Ph.D. fellows would be made by the Corporate Fellowship Committee. Petitioner, under date of December 30, 1965, filed an application for a TI Ph.D. fellowship, stating that he planned to attend Stanford University and that his field of study would be electrical engineering. On April 7, 1966, TI announced in its company newspaper that from a field of 15 candidates, 7 TI employees had been chosen by the Corporate Fellowship Committee to receive Ph.D. fellowships in 1966, and petitioner's name was among the 7 employees listed as having been selected. Prior to the announcement *149 in the newspaper petitioner had received a letter dated March 29, 1966, from the chairman of the TI Fellowship Committee informing him that he had been selected by the committee for a TI fellowship "in recognition of your past accomplishments and of your promising potential for the future." There was enclosed with the letter two copies of a document entitled, "Fellowship Agreement." Petitioner was requested to sign and return one copy to the Fellowship Committee to signify his acceptance of the fellowship. The letter advised petitioner that his grant for the academic year was $14,040 which would be paid in installments on or about September 15 and January 15; that TI would arrange to have his tuition billed directly to the corporation; and that relocation expenses would be paid by TI for his move to and from the University area up to $2,000 for each move. The letter informed petitioner that he was expected to supply needed supplies, texts, and similar materials and enclosed a copy of TI's transfer procedure containing information with respect to transportation and moving applicable to TI fellows. The letter further informed petitioner that as a TI fellow he would be on an educational *150 leave of absence and that in this employee status his TI-paid insurance coverage, profit-sharing participation, and service recognition benefits would continue. He was also informed that if he chose to continue his optional TI group insurance coverage, he should arrange for prepayment premiums. The letter also informed petitioner that while on leave status, income and social security taxes would be withheld from the payments made to him. Petitioner accepted the Ph.D. fellowship grant from TI and signed the TI fellowship agreement. This agreement contained statements under three numbered paragraphs. Paragraph I entitled, "Patents Agreement," provided that the recipient of the fellowship understood and agreed that the agreement to assign inventions that he had executed upon employment by TI remained in effect to the extent not inconsistent with arrangements that he might be required to make in connection with part-time research while a graduate student. Paragraph II entitled, "Proprietary Information Agreement," provided that petitioner recognized that his obligations with respect to TI trade secrets and proprietary information remained the same while on educational leave as they were *151 when he was a full-time employee. Paragraph III dealt with financial arrangements. This paragraph provided: In consideration of the financial support provided to me by Texas Instruments Incorporated, I agree to complete one month in full-time employment at TI for each month of Fellowship support that I receive, beginning on the date of my return to full-time employment at TI from the Fellowship. This paragraph further provided that if petitioner voluntarily terminated his employment with TI before fulfilling the employment obligation, he agreed to 444 reimburse TI for the amount he had received for support with 6 percent interest per year from the date of his voluntary termination. Petitioner's leave of absence status during the years here in issue was in accordance with TI's standard procedure for educational leaves of absence. Petitioner was allowed, as he was informed in the letter he would be, to continue his group medical and life insurance programs and retained his status in the company's profit-sharing plan. Petitioner enrolled in Stanford University at Palo Alto, California in September 1966. Petitioners resided in Menlo Park, California from September 1966 until *152 May 1969. Petitioner had participated in TI's 1965 incentive plan of stock and cash awards but did not participate in the 1966, 1967, or 1968 incentive plans. As agreed in the letter, TI paid petitioner's tuition directly to Stanford University and paid the transportation charges incurred by petitioners in their move from Dallas, Texas to Menlo Park, California and their move in returning from Menlo Park to Dallas. In selecting the employees to receive TI Ph.D. fellowship awards, the Corporate Fellowship Committee gave consideration both to the past performance of applicants and to the long range interest of TI in the applicant's proposed area of study. While attending Stanford University, petitioner did not work directly on any TI project, and there was no control or supervision by TI of any of his course work, research, or dissertation. Petitioner did not send grade reports or progress reports, as such to TI. However, he did occasionally visit officials of TI when he was in Dallas and addressed letters to such officials with respect to the amount of work he had completed and the work he planned to complete. In addition to sending petitioner checks twice a year, TI mailed *153 to petitioner copies of the company newspaper and an annual report concerning his account in the profit-sharing plan. Petitioner made no withdrawals or loans from the profit-sharing plan while he was on educational leave. While on educational leave of absence, petitioner could have made withdrawals as loans from the profit-sharing plan of TI as an employee, but he could not have withdrawn the entire fund except upon his termination as an employee. When petitioner originally enrolled in Stanford University, he was in the Electrical Engineering Department, but in June 1967 he transferred to the Engineering Economic Systems Department. He did not obtain prior approval from TI or consult TI with respect to making this transfer. Petitioner selected and performed a dissertation research program which was not related to his prior work experience at TI. Preliminary results of the research were published at Stanford University in December 1968 and have been available to the public since that date. The choice of the topic of petitioner's dissertation and the conduct of his research with respect thereto were determined solely by petitioner and the professors at Stanford University advising *154 petitioner. TI did not attempt to influence or direct the choice of petitioner's dissertation topic. Petitioner and his faculty adviser met often in conference with respect to petitioner's dissertation and petitioner's direction with respect to work on the dissertation came entirely from this faculty supervisor. Stanford University requires all candidates for the Ph.D. degree to execute a "Publication Agreement," with University Microfilms, a Xerox Company. Under this agreement the Xerox Company is permitted to reproduce and sell copies of the Ph.D. dissertation and the Xerox Company places one microfilm copy of the dissertation in the Library of Congress. No copies of petitioner's dissertation or draft thereof was provided to TI. In early 1969 petitioner notified TI that he would be ready to return to work at TI around the middle of 1969. A series of job interviews were arranged for petitioner, and after completing these interviews petitioner selected a place offered to him on the corporate staff as manager of advanced corporate planning. All positions at TI are categorized by job type and job grade, and wages are paid according to the TI standard compensation for these specific *155 positions. When petitioner went on educational leave from TI in September 1966, he was being paid for the job category he was then occupying. Upon his return to TI in June 1969 he was paid for the job category he then assumed, which carried a salary of $285 per month more than the salary carried by the position which he had occupied when he went on educational leave. 445 During the years 1965 through 1970 the number of employees of TI ranged from a low of 34,519 to a high of 58,974. The various departments of TI do interviewing to fill vacancies in their departments. In interviewing on the college campuses, representatives of TI refer to the various educational programs offered by the corporation to its employees. TI has a division referred to as Corporate Personnel, and on the accounting records of TI, fellowship expenses paid for Ph.D. fellows are charged to Corporate Personnel. Sometime in 1969 or 1970, TI discontinued the Ph.D. fellowship program of the type which was awarded to petitioner. It did continue other types of programs. During the entire time that TI was making Ph.D. fellowship grants of the type granted to petitioner, no prospective recipient objected to signing *156 the agreement to return to work for TI, and all employees who have been recipients under this Ph.D. fellowship program have in fact returned to TI following their educational leaves of absence. There was some disagreement among members of the TI Corporate Fellowship Committee as to the advisability of requiring recipients of TI Ph.D. fellowship grants to sign an agreement requiring that they return to work for TI after completing their education or reimburse TI for the amount of the grant received. However the persons in favor of requiring such an agreement prevailed and this agreement was required from all recipients of TI Ph.D. fellowship grants from the inception of the program in 1961 until its termination. Petitioner received the degree of "Engineer" from Stanford University in January 1969 and had completed substantially all of his work toward his Ph.D. when he returned to work at TI in June 1969. He received his Ph.D. degree from Stanford University on January 6, 1972. During the years 1967, 1968, and 1969 petitioner expended the amounts of $133.21, $121.27, and $241.76, respectively, for books, supplies, and related expenses incurred while attending Stanford University. *157 Petitioner received $7,020 under the TI fellowship grant made to him for the year 1966, $14,040 for each of the years 1967 and 1968, and $7,020 for the year 1969. Petitioners deducted these amounts in each of the years 1966, 1967, 1968, and 1969 in computing their taxable income. Petitioners did not deduct any additional amount for expenditures for books, supplies, and the like. Respondent in his notices of deficiency disallowed the deductions claimed by petitioners in each of the years here in issue for the amounts received by petitioner pursuant to his TI fellowship grant with the explanation that the amounts were not excludable under section 117 or any other section of the Internal Revenue Code. Respondent at the trial conceded that if he is correct in his disallowance of the deductions or exclusions claimed by petitioners for the amount of the TI fellowship grants, petitioners are entitled to deduct the amounts of $133.21, $121.27 and $241.76 for the years 1967, 1968, and 1969, respectively, for educational expenditures for books and supplies. Opinion Section 117(a)[2] provides that the gross income of an individual does not include any amount received as a scholarship *158 at an educational institution or as a fellowship grant. Section 1.117-4(c) [3] Income Tax Regs., provides that amounts paid or allowed to 446 an individual to enable him to pursue studies or research shall not be considered as a scholarship or fellowship grant if such amounts represent compensation for either past, present, or future employment services or amounts paid or allowed to the individual to enable him to pursue studies or research primarily for the benefit of the grantor. This regulation has been held to be a valid interpretation of the statute. Bingler v. Johnson, 394 U.S. 741 (1969). *159 *160 Petitioner in this case takes the position that the amounts received by him during the years here in issue from TI as fellowship grants were not compensation for services or payments primarily for the benefit of the grantor within the meaning of respondent's regulations as interpreted in Bingler v. Johnson, supra. Petitioner argues that under the facts here present, there is no "quid pro quo" for the fellowship grant comparable to that found to exist in Bingler v. Johnson. Petitioner's position is that since he was fully compensated for the services he rendered to TI before receiving the fellowship grant and for the services he rendered after he returned to work for TI, the fellowship grant was not for past or future services and that it was not for present services since he rendered no services to TI while on educational leave. Petitioner argues that although there might be some small advantage to TI in obtaining back a better educated employee previously trained in the work of TI than in hiring a new employee, this advantage is not of nearly as great a monetary value to TI as the cost to TI of the fellowship grant payments. Petitioner refers to the testimony of a *161 vice president of TI who was a member of the fellowship committee to the effect that although TI could hire individuals with Ph.D. degrees for the same salary paid to returning TI fellows, that he felt it was some advantage to TI in the long run to retain the services of people previously employed by TI who had excelled in their work at TI. Petitioner argues that this advantage is not one that can be measured in money but is merely a minimal advantage moneywise, whereas the payments under the TI fellowship grants were money payments. Petitioner argues that the agreement of a recipient of a TI fellowship grant to return to work for TI was merely a condition to receiving the grant and was not an exchange of something of value for the grant. Petitioner contends that this case is distinguishable on its facts from Bingler v. Johnson, supra. Petitioner points out that in Bingler v. Johnson, the periods of study were from 9 to 12 months, whereas here they were from 2 1/2 to 3 years; that the grantor of the fellowship in Bingler v. Johnson, maintained some control over the research done by the recipient of the grant whereas TI did not maintain such control over petitioner's *162 research; and that the university attended and the research topic had to be approved by the grantor in Bingler v. Johnson, but no such restriction on the university to be chosen or approval of the research topic was required by TI. [4]
While we recognize that there are some differences in the factual situation in Bingler v. Johnson, supra, and the instant case, in our view these factual differences are not such as to warrant a conclusion that *163 the payments by TI to petitioner did not represent compensation for past, present, or future services. In order to be eligible for a TI fellowship grant, an applicant must have been employed by TI for at least 2 years and in order to receive the grant he was required to agree to return to the employ of TI or repay the grant. While on the educational leave of absence the TI fellowship grantee retained his status as an employee, causing him to retain his seniority rights, his rights in the TI profit-sharing plan, and to be covered by TI insurance. In determining who was to receive an award, the course of study to be pursued and its 447 long range interest to TI were considered. The testimony of TI officials makes it clear that whereas the specific areas of studies to be pursued were not determinative of whether a grant would be made, the general area being in line with the long range interests of TI was a basic consideration in making the grant. These facts are such as to cause the payments here to be compensation within the meaning of respondent's regulations. The fact that petitioner was paid the salary designated for his "job type" and "job grade" by TI both before he went *164 on educational leave and after he returned to TI does not require the conclusion that the fellowship grant payments were not further compensation for his superior work prior to the leave or his anticipated superior work after the leave. A bonus given by a company which is not in proportion to the employee's salary as compared to the salary of other employees is nevertheless consistently considered to be compensation. Also the fact that petitioner was studying in an area which would cause him to be better able to render services to TI upon his return from his educational leave could be considered to constitute present services to TI. Petitioner argues that his agreement to return to work for TI was not enforceable. He cites no authority to support his contention that TI could not have required repayment of the amount of the fellowship grant paid to him while he was on educational leave had he not returned to work for TI. Whether TI would have demanded enforcement of the agreement is not known since in no instance did a TI fellowship grantee not return to work for TI. Not only is this case similar on its facts to Bingler v. Johnson, supra, it is also comparable to the *165 factual situation in Ussery v. United States, 296 F. 2d 582 (C.A. 5, 1961), in which the Court held that an amount paid to an employee of a State Welfare Department on educational leave under an agreement obligating the employee to return to work for the Department was not excludable as a scholarship or fellowship grant under section 117; and to our holding in John E. MacDonald, Jr., 52 T.C. 386 (1969), that amounts paid by IBM to an emplouee under its advanced education program where the employee was expected to return to the sponsoring division of IBM were not excludable as a scholarship or fellowship grant; and Lawrence A. Ehrhart, 57 T.C. - (Mar. 28, 1972), holding payments by an employer to enable an employee to study to become an insurance actuary not to be excludable. We hold that respondent was correct in disallowing the deductions claimed by petitioners in the years here in issue since the amounts are not properly excludable under section 117. Since respondent has conceded that petitioner is entitled to deduct certain expenditures for books, supplies, and related items, Decisions will be entered under Rule 50. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. - In the case of an individual, gross income does not include - (1) any amount received - (A) as a scholarship at an educational institution (as defined in section 151(e)(4), or (B) as a fellowship grant, including the value of contributed services and accommodations; (2) any amount received to cover expenses for - (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
3. Sec. 1.117-4 [Income Tax Regs.] Items not considered as scholarships or fellowship grants. * * * (c) Amounts paid as compensation for services or primarily for the benefit of the grantor. (1) Except as provided in paragraph (a) of section 1.117-2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor. (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor. However, amounts paid or allowed to, or on behalf of an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117↩ if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself be considered to destroy the essential character of such amount as a scholarship or fellowship grant.
4. Petitioner relies to an appreciable extent on a Memorandum Opinion of this Court, Laurence E. Broniwitz, T.C. Memo. 1968-221, in which we held that a stipend paid to a degree candidate who was a full-time student directing his own courses of study, and not obligated to work for the grantor after receiving his degree, was excludable under section 117 even though the taxpayer was nominally carried as an employee on the grantor's payroll while he was a student. While the facts present in Laurence E. Broniwitz distinguish that case from the instant case, it should also be pointed out that the Broniwitz case was decided prior to the Supreme Court's decision in Bingler v. Johnson, 394 U.S. 741↩ (1969).