MICHAEL A. SMITH, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5124–71. Filed May 23, 1973.

*Barry G. Crown*, for the petitioner.
*Gary F. Walker*, for the respondent.

OPINION

Scott, *Judge:* Respondent determined a deficiency in petitioner's income tax for the taxable year 1967 in the amount of $419.

The issue for decision is whether the payments petitioner received from the Oldsmobile Division of General Motors Corp. during his work periods while enrolled as a cooperative student with the General Motors Institute constitute a scholarship excludable from his gross income.

All of the facts have been stipulated and are found accordingly.

Petitioner Michael A. Smith resided in Lansing, Mich., at the time he filed his petition in this case. He filed his Federal income tax return for the taxable year 1967 and an amended return for that year with the Internal Revenue Service Center, Cincinnati, Ohio.

In August 1965 petitioner enrolled as a freshman student in the General Motors Institute (GMI) in Flint, Mich. Prior to this time petitioner had been a student at Northern High School in Flint, Mich. He had never been employed by General Motors Corp. (GMC) or any of its divisions prior to his enrollment at GMI.

GMI is an accredited undergraduate college of engineering and management. It is incorporated as a nonprofit corporation under the laws of the State of Michigan and its governing body is a board of regents composed of approximately 50 executives of GMC. GMI is also considered to be part of the personnel staff activity of GMC. The president of GMI reports both to the board of regents of GMI and to the vice president for personnel administration of GMC. Financially GMI is treated by GMC as a subsidiary and its operating deficits which ranged in the years 1965 through 1969 from $4 to $9 million are made up by contributions from GMC. In 1967 GMI was the only accredited undergraduate college maintained by an industrial corporation.

To be admitted as a student at GMI an applicant was required to meet academic standards in secondary schools set by GMI and to be "sponsored" by one of the GMC units for work training. An applicant for admission to GMI was required to attach to his application for admission a list of those GMC units which he would prefer to have as his sponsoring GMC unit. The applicant is advised to consider in making his choice of desired sponsoring GMC units both the products and activities of the units in relation to the applicant's interests. An

applicant must be tentatively selected for admission to GMI before his application is submitted to the GMC unit he has requested for sponsorship. When the GMC unit receives the application, it will either be returned to GMI with an indication that the unit has no interest in the student or the applicant will be contacted and invited to come to the unit for testing and for an interview. Thereafter the GMC unit will either accept or reject the applicant for unit sponsorship. The successful applicant is notified of his acceptance and his sponsorship by a particular GMC unit.

GMC units are individual manufacturing, assembly, or research plants of GMC or its component divisions. Each unit has particular recurring personnel requirements which its management hopes can be filled in the future by GMI graduates which it has sponsored. The primary purpose of the management of a GMC unit in selecting an applicant for cooperative participation in that unit with study at GMI is to provide for its anticipated needs for technical and management personnel.

Following his admission to GMI, the student spends alternating 6-week periods in classroom and laboratory instruction at GMI in Flint and in work training in his sponsoring unit of GMC. During each semester of the program in this cooperative plan a student spends a total of 12 weeks in studies at GMI and a minimum of 12 weeks in work in his sponsoring GMC unit.

During the periods in which the GMI student is working for his sponsoring GMC unit, he is paid by the sponsoring unit at the standard hourly rates established by GMC for wages for GMI students. These rates increase over the 5-year period in which the GMI student alternates between work and study. The GMI student receives no payments from his sponsoring GMC unit for these periods of time in which he is attending classes at GMI in Flint. GMC also has cooperative students from colleges and universities other than GMI and they are paid at a standard rate per hour which is not necessarily the same as the rate set for GMI students.

During the taxable year 1967 GMI charged each student approximately $400 per semester for tuition. GMI has a limited program of loans to students with financial need but does not offer scholarships. There is a GMI Alumni Scholarship Fund and GMI students are eligible to compete for scholarships awarded by other organizations. GMC has a well-established scholarship program but GMI students are not eligible for these GMC scholarships.

The GMI student is treated by GMC as an employee of GMC during those periods of time in which the student is working for his sponsoring unit. He is required to file timecards comparable to those filed by

other employees. He earns leave and is eligible to participate in the incentive-awards plan of GMC on the same basis as other employees. He is required when needed to work overtime hours for which he is paid at the overtime rate and receives generally the same fringe benefits that other employees receive. The GMI student is treated the same as other cooperative students at GMC. The management attempts to offer these students a variety of work experiences and at times they will work on a production line in a plant while the union worker who normally does the work oversees their work. This is considered by the management of the GMC unit to be good training for certain of the cooperative students who plan to go into technical fields. However, most of the working time of the cooperative student is spent in productive work for the GMC unit which would otherwise be done by someone else.

The GMI student who is dismissed by his GMC sponsoring unit for cause loses his status as a GMI student and he may not attend classes at GMI. The student who drops out of GMI for academic reasons may apply for regular employment with the GMC unit which had sponsored him in GMI. However, the GMC unit is under no obligation to retain him as an employee if he drops out of the GMI academic program.

Upon successful completion of the 5-year GMI program, the GMI student is awarded a bachelor's degree in mechanical, electrical, or industrial engineering or in industrial administration. The GMI graduate is under no obligation to work for GMC following graduation. Neither the GMC sponsoring unit nor any other GMC unit has any obligation to hire the GMI graduate. However, the objective of GMC is to make an offer to the student upon his graduation which he will accept and in fact 90 percent of GMI students who have graduated in recent years have gone on to work full time for GMC, usually in the GMC unit which sponsored their GMI cooperative training. In the last 5 years all GMI students sponsored by the Oldsmobile Division of GMC have been offered and have accepted employment with GMC upon graduation from GMI.

Petitioner was sponsored by the Oldsmobile Division of GMC while he was a student at GMI. In September and October 1965 during his first work period, he received $2.76 per hour. His work consisted of collecting data on competitors' models, processing data, and running errands. In his four work periods in 1966 petitioner's work consisted of processing of service parts back orders, keeping files current in the suggestion department and employment department, for the latter half of June and July 1966, conducting tours through the plant, and delivering cars to employees and customers. His hourly pay com-

mencing in March of 1966 was $2.87 and was increased in October of 1966 to $3.02.

In 1967 petitioner had four full work periods at GMC and started on December 21, 1967, into a fifth work period. In his first 1967 work period he was assigned to the Laboratory Department and worked on testing die for scrap loss. During his second work period in 1967 beginning on March 27 his hourly pay was $3.07 and he worked in the Production Engineering Department preparing control room manual for engine block machining line. In his third work period in 1967 petitioner worked in the Reliability Department, checking on the 1968 pilot cars produced. In his fourth work period commencing October 2, 1967, his hourly pay was $3.16 and he worked in the Production Engineering Department testing automotive parts in the laboratory. He remained in this department when his work period commenced on December 21, 1967, and worked at updating central files on a daily basis. Petitioner continued in the cooperative program during 1968 and 1969 with alternate study and work periods, and commencing in the fall of 1969 began his fifth-year thesis on the subject of "Laboratory Consideration for Test Automation Using a Control Process Computer." Petitioner's hourly pay beginning in March 1968 was $3.79, beginning in September 1968 was $3.94, and beginning in March 1969 was $4.26.

Although petitioner was entitled to express his preference for specific jobs during the work periods at the Oldsmobile Division of GMC, the power to decide which job was to be assigned to petitioner was with the management of the Oldsmobile Division of GMC. In making assignments, consideration was given, among other factors, to prior work-period experience of the GMI student, degree of engineering knowledge of the GMI student, major work problems confronting the Oldsmobile Division, and manpower needs and the student's placement potential within the Oldsmobile Division upon his graduation from GMI. All functions and activities performed by petitioner at the Oldsmobile Division of GMC during his years of cooperative training were under the control and direction of the work supervisor and the plant representative, both of whom were GMC employees.

During petitioner's taxable year 1967 he received the amount of $3,504.02 from the Oldsmobile Division of GMC. GMC withheld Federal income and FICA taxes from the payments it made to petitioner in 1967. Petitioner excluded the amount of $3,504.02 which he received from GMC in his taxable year 1967 from his gross income as an amount received as a scholarship. Respondent determined the amount received by petitioner to be compensation for work performed for GMC and therefore includable in his gross income.

Section 117(a), I.R.C. 1954, provides that amounts received as a scholarship or fellowship shall not be included in gross income.[1] Section 117(b)(1) provides that in the case of individuals who are candidates for a degree, subsection (a) shall not apply to any amount paid to the individual for part-time employment required as a condition for the scholarship or fellowship except if such services are required of all degree candidates whether or not recipients of scholarships or fellowships as a condition to receiving the degree, in which case the services shall not be regarded as part-time employment.

Petitioner contends that since all GMI degree candidates were required to work at GMC in order to obtain their degrees, the amount they received for their services at GMC is not excluded from the definition of scholarship because of the provisions of section 117(b)(1).

Respondent takes the position that section 117(b)(1) has no bearing on the issue here since the payments received by petitioner from GMC were not a "scholarship" within the meaning of section 117(a) and therefore are not excludable from his income under that section without reference to section 117(b)(1).

Section 1.117–4(c)(2), Income Tax Regs., provides:

Sec. 1.117–4 Items not considered as scholarships or fellowship grants.

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

This provision of the regulations was upheld by the Supreme Court in *Bingler* v. *Johnson*, 394 U.S. 741 (1969).

---

[1] Sec. 117, I.R.C. 1954, provides in part as follows:

SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

(a) GENERAL RULE.—In the case of an individual, gross income does not include—

    (1) any amount received—

        (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(b) LIMITATIONS.—

    (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receive such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

Respondent contends that the payments by GMC to GMI students were payments for their services while they were working for GMC and not payments to them while at GMI. Respondent contends that for this reason the payment to petitioner was not a scholarship and therefore it is immaterial that all GMI students were required to work at GMC.

In the alternative respondent contends that the amounts paid to GMI students were paid to enable them to pursue studies primarily for the benefit of GMC and therefore under section 1.117–4(c)(2) of the Income Tax Regulations do not constitute scholarships. Respondent states that where a payment is to permit a student to pursue studies or research primarily for the benefit of the grantor, it is immaterial that the payment is made to the student while at an educational institution or that all students who are candidates for a degree in that institution are required to render similar services to receive the payment.

Since we agree with respondent on his alternative contention, we need not decide whether payments made to petitioner by GMC during his work periods were purely as an employee working at GMC during these periods or were made to him while "at an educational institution" so as to meet the first basic requirement of section 117(a). See, however, *Elmer L. Reese, Jr.*, 45 T.C. 407 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967).

In our view this record shows that the organization and operation of GMI by GMC was a careful and deliberate effort by GMC to obtain engineers and administrators specially trained for the specific needs of its business. Admission to GMI is conditioned upon the student's obtaining sponsorship by a GMC unit which in turn depends upon the anticipated need by that GMC unit for persons who will be trained in specific engineering and management disciplines. The facilities and curriculum of GMI are tailored to produce graduate engineers and administrators in the fields needed by GMC. While GMI molds its curriculum in a general enough manner to produce engineers who are qualified to serve employers other than GMC, the program at GMI and the work assignments made in the sponsoring GMC unit are designed to produce for GMC an engineer or manager who can step into a job with GMC upon graduation from GMI. The principal purpose of the payments made by GMC to the GMI student is to benefit GMC. The fact that this benefit is achieved by creating a pool of trained engineers and managers who are not legally bound to work for GMC upon graduation from GMI does not diminish the fact that the prime benefit flows to GMC from payments to GMI students. In *Lawrence*

*A. Ehrhart*, 57 T.C. 872, 882 (1972), affd. 470 F. 2d 940 (C.A. 1, 1973), we stated that—

As we explained in *John E. MacDonald, Jr.*, 52 T.C. 386, 393, the absence of a contractual undertaking by the recipient to perform services for his grantor does not make a payment a "scholarship" where the evidence as a whole suggests a contrary conclusion. * * *

In the *Ehrhart* case the evidence showed that the insurance companies who made the payments to the taxpayers had not been very successful in retaining the services of the students to whom the payments were made. In the instant case the evidence shows that GMC has been very successful in having GMI graduates come with GMC as full-time employees upon graduation and in retaining these GMI graduates as employees at least for the first several years following graduation.

We have considered the cases relied upon by petitioner but find all of these factually distinguishable from the instant case. We have found no case in which the facts are on all fours with the facts in the instant case, probably because of the fact that the relationship between GMI and GMC is unusual if not unique. The case that most closely resembles this case factually is *Lawrence A. Ehrhart, supra,* and much of the reasoning we used in reaching our conclusion in that case that the payments to the taxpayers by the insurance companies were made with the reasonable contemplation "that sponsorship would develop trained employees for them" and that the primary object of the program was "to recruit and train" employees "for the benefit of the sponsoring companies" is equally applicable in this case.

On the basis of this record we conclude that the payments by GMC to petitioner in the year in issue are not excludable from his income under section 117(a).

*Decision will be entered for the respondent.*