JOHN E. MACDONALD, JR., AND HENRIETTA E. MACDONALD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1145–67.    Filed June 9, 1969.

John E. MacDonald, Jr., pro se.
*Richard J. Mandell*, for the respondent.

388

OPINION

RAUM, *Judge:* At issue is whether petitioner's full salary of $15,300 paid to him in 1961 by IBM while he was pursuing his studies towards a Ph. D. degree is excludable from his gross income as a "scholarship" or "fellowship grant" under section 117, I.R.C. 1954.[1] These terms have been defined and limited in Income Tax Regs. section 1.117–3 and 4,[2] which have recently been held valid by the Supreme Court in

---

[1] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.

  (a) GENERAL RULE.—In the case of an individual, gross income does not include—

    (1) any amount received—

      (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or

      (B) as a fellowship grant,

including the value of contributed services and accommodations;

    (2) any amount received to cover expenses for—

      (A) travel,

      (B) research,

      (C) clerical help, or

      (D) equipment,

which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

  (b) LIMITATIONS.—

    (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—

In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research, or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

[2] Sec. 1.117–3 Definitions.

  (a) *Scholarship.* A scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies. * * *

\*      \*      \*      \*      \*      \*      \*

  (c) *Fellowship grant.* A fellowship grant generally means an amount paid or allowed to, or for the benefit of, an individual to aid him in the pursuit of study or research. * * *

Sec. 1.117–4 Items not considered as scholarships or fellowship grants.

The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

\*      \*      \*      \*      \*      \*      \*

  (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

    (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of, the grantor.

However, amounts paid or allowed to, or on behalf of an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

*Bingler* v. *Johnson*, 394 U.S. 741 (1969). And under these regulations amounts representing "compensation for past, present, or future employment services" and amounts paid to an individual "to enable him to pursue studies or research primarily for the benefit of the grantor" are not excludable under section 117. *Bingler* v. *Johnson* points the way to the application of the regulations to the present case. We hold that petitioner's $15,300 salary received in 1961 was not tax-free.

Preliminarily, it may be noted that the Supreme Court regarded as applicable to the provisions before us the statement of the House Ways and Means Committee that the statute was not intended to relieve from tax "those grants which are in effect merely payments of a salary during a period while the recipient is on leave from his regular job," and that scholarships and fellowship grants "generally are of small amount and are usually received by individuals who would have little or no tax liability in any case." H. Rept. No. 1337, 83d Cong., 2d Sess., p. 17; *Bingler* v. *Johnson*, 394 U.S. 741 (1969). In respect of both of these criteria petitioner's position is weaker than those of the unsuccessful taxpayers in *Bingler* v. *Johnson*. Here petitioner received his full pay while on leave at the university whereas the employees in *Bingler* received a specified percentage (ranging from 70 percent to 90 percent) of salary, and the amounts received by them ($5,670 and $9,698.90) were substantially less than petitioner's $15,300. In any event, however, petitioner's payments fail to qualify for exclusion under the regulations. As we view the record before us, the "grant" to petitioner was primarily for the benefit of IBM and reflected a recognition of or compensation for past or expected future employment services.

The advanced education program was initiated by IBM plainly for the purpose of receiving the kind of contributions that skilled and gifted employees like petitioner could make to the company as a consequence of their higher levels of education. This was made clear by the explicitly announced objectives of the program:

1. To develop a spirit of inquiry and creativity, and maintain a high level of technical competence.

2. To increase technical competence through study of fundamental sciences and advanced technical subjects of particular interest to the company.

3. To provide an environment which encourages full professional development and attracts personnel of the highest quality.

Participants in the program were selected from among those employees who had worked at least 1 year with IBM and who, by reason of their job accomplishments, offered the greatest promise of future on-the-job achievement. Applicants for the program were asked in effect to explain how their advanced education would benefit the company. In addition, one of the initial stages of the selection process involved a "Determination of [the] relationship of the employee's field of graduate study interest to the prime areas of interest of the com-

pany." And at the final stage of selection a review was required at a high level "to insure," among other things, that there was a "proper relationship of [the employee's] fields of interest to [IBM's] engineering needs." The employee was free to choose the university at which he pursued his studies only with the approval of IBM.

Participants in the program were obviously viewed by IBM as undertaking regular job assignments. Accordingly, stipends were in the exact amount as the participants' previous salaries, with no adjustments for need or one's financial ability to meet educational expenses. Payments were made in the same manner as previous salary payments and a portion of these payments was withheld for Federal income tax purpose, such portion being the same as when the payments were salary payments. Further, company benefits, such as health insurance, were continued throughout the period of participation in the program.

In addition, IBM sought to administer the program in such manner as would "aid the employee at school to continue identifying himself with the Company," and instructions were issued to the effect that "The employee should be encouraged to periodically visit the laboratory for technological interchange and he should be visited on campus during study." The employee was required to "maintain company contact." Moreover, the program called for negotiation with the university "to protect IBM's interests in theses, dissertations and doctoral research."

Finally, those selected for participation in the program were "expected to return to the sponsoring division [of IBM]" after completion of their academic work. In this respect the present case is weaker for the Government than *Bingler* v. *Johnson*, because in that case the employees were contractually obligated to return to their employer, and the Court stressed this fact. Nevertheless, we think that IBM's clear expectation that the employee would return, when considered in the context of the entire case, is sufficient in reaching the conclusion that the "grant" was primarily for the benefit of the grantor. The Supreme Court certainly did not lay down any indispensable requirement that there be a contractual undertaking, although the presence of such an undertaking would obviously be strong evidence in support of the conclusion that benefit to the grantor was of prime importance. We think that the evidence must be considered as a whole, and when so considered the conclusion is unavoidable that the payments to petitioner did not qualify as a "scholarship" or "fellowship grant" under the statute and regulations. Cf. *Ussery* v. *United States*, 296 F. 2d 582 (C.A. 5); *Woddail* v. *Commissioner*, 321 F. 2d 721 (C.A. 10); *Stewart* v. *United States*, 363 F. 2d 355 (C.A. 6).[3]

*Decision will be entered for the respondent.*

---

[3] Petitioner argues that in the audit of his 1960 return, the corresponding amounts received in that year were treated as excludable from his gross income and that he is therefore entitled to like treatment for 1961. The point is without merit. Cf. *Chester Farrara*, 44 T.C. 189, 191.