ROBERT W. WILLIE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4516–69. Filed December 16, 1971.

*Larry L. Lenoir*, for the petitioner.
*Richard D. Hall, Jr.*, for the respondent.

WITHEY, *Judge:* Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1967 in the amount of $105.

The only issue for decision is whether the amount received by petitioner during 1967 for participation in the Biloxi Municipal Separate School District inservice program constituted a scholarship or fellowship grant excludable from his gross income under section 117 of the 1954 Code.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found and incorporated herein by this reference.

Robert W. Willie, hereinafter sometimes called petitioner, is an individual and at the time of filing the petition herein resided in Biloxi, Miss.

Petitioner's Federal income tax return for the calendar year 1967 was filed with the district director of internal revenue, Jackson, Miss.

During the year 1967, petitioner was employed as an instructor by the Biloxi Municipal Separate School District, hereinafter sometimes referred to as Municipal. At the time of the instant proceeding, petitioner had a master's degree in social studies and had completed some academic credit toward a doctor of philosophy degree in history.

During 1967, Municipal was undergoing a process of desegregating its public schools. As a result, Municipal and teachers employed therein were confronted with administrative and teaching problems incident to such desegregation. In an effort to cope with the problems incident to desegregating the Biloxi public schools, Municipal instituted an inservice program for the training of teachers who were confronted with teaching children of widely divergent backgrounds. The format of the program was established by a committee consisting of 16 teachers and 3 administrators.

All teachers and supervisors were encouraged but not required to participate in the program. Anyone employed by Municipal as a teacher or an administrator could participate in the program. There

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.

were approximately 300 participants in the program, including the petitioner, of which about 280 were classroom teachers or full-time instructional personnel. About 100 teachers or full-time instructional personnel employed by Municipal did not participate in the program.

Petitioner, as well as other participants in the program, attended seminars and conferences which were held at times other than the regular school hours. A large number of elementary and secondary school teachers from other States that had desegregated met with individual teachers of Municipal and discussed the problems which they had encountered in desegregation.

The program enabled Municipal to improve the education of children in the desegregated schools and provided teachers and the board of education with valuable ideas as to methods of teaching and coping with problems of the newly desegregated schools in Biloxi, Miss.

This inservice program was funded through the U.S. Department of Health, Education, and Welfare, hereinafter sometimes referred to as HEW, under title IV, sec. 405, of Pub. L. 88–352, commonly referred to as the Civil Rights Act of 1964.[2]

Municipal was required under the terms of its grant from the U.S. Department of Health, Education, and Welfare to make periodic reports to the U.S. Office of Education. Also, reports on the inservice training programs were maintained, circulated, and made available to any teacher or member of the board of education.

Petitioner received the aggregate amount of $420 for his attendance on a per diem basis during the taxable year 1967 from funds provided under the aforementioned Act, which amount he did not include in his taxable income for that year.

### ULTIMATE FINDINGS OF FACT

Petitioner's participation in the inservice training program was primarily for the benefit of the Biloxi Municipal Separate School District.

The payments received by petitioner during 1967 represented compensation for employment services.

---

[2] Sec. 405, tit. IV, Desegregation of Public Education, states, in material part, as follows (p. 247) :
(a) The Commissioner is authorized, upon application of a school board, to make grants to such board to pay, in whole or in part, the cost of—
(1) giving to teachers and other school personnel inservice training in dealing with problems incident to desegregation, and
(2) employing specialists to advise in problems incident to desegregation.

OPINION

Section 117(a)[3] excludes from gross income any amount received "as a scholarship at an educational institution" or as "a fellowship grant." The statute does not define the terms "scholarship" and "fellowship grant," but the regulations provide that amounts representing "compensation for past, present, or future employment services," and amounts "paid * * * to * * * an individual to enable him to pursue studies or research primarily for the benefit of the grantor" are not excludable as scholarships or fellowship grants. Sec. 1.117–4(c)(1) and (2), Income Tax Regs.[4] These regulations have been held to conform to the statutory purpose and to comport with the ordinary understanding of scholarships and fellowships as relatively disinterested, no-strings educational grants with no requirement of any substantial quid pro quo from the recipients. *Bingler* v. *Johnson*, 394 U.S. 741 (1969). In upholding the validity of the regulations, the Supreme Court stated in *Bingler* v. *Johnson, supra* at 757, that:

The thrust of the provision dealing with compensation [sec. 1.117–4(c)] is that bargained-for payments, given only as a "*quo*" in return for the *quid* of services rendered—whether past, present, or future—should not be excludable from income as "scholarship" funds. * * *

---

[3] SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS.
  (a) GENERAL RULE.—In the case of an individual, gross income does not include—
    (1) any amount received—
      (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or
      (B) as a fellowship grant,
including the value of contributed services and accommodations; * * *
[4] Sec. 1.117–4 Items not considered as scholarships or fellowship grants.
The following payments or allowances shall not be considered to be amounts received as a scholarship or a fellowship grant for the purpose of section 117:

  *     *     *     *     *     *     *

  (c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of sec. 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.
  (2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if, the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the results of his studies or research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of such amount as a scholarship or fellowship grant.

The regulations are thus designed, at least in part, to distinguish relatively disinterested payments made primarily for the purpose of furthering the education and training of the recipient from payments made primarily to reward or induce the recipient's performance of services for the benefit of the grantor. See *Elmer L. Reese, Jr.*, 45 T.C. 407, 411 (1966), affirmed per curiam 373 F. 2d 742 (C.A. 4, 1967). Following these regulations, Rev. Rul. 67-239, 1967-2 C.B. 73, holds that amounts received for participation in an inservice training program, apparently identical to the program in the instant case, represent compensation for present or future services.

In the case at bar, the pivotal question to be resolved in determining the taxability of the payments received by petitioner is whether the benefits derived from participation in the inservice program instituted by Municipal inured primarily to the employer-grantor, or the petitioner. The issue is one of fact to be determined on the basis of all of the facts and circumstances in each case. For this reason, a detailed discussion of the facts in the many cases in this area would not prove helpful. See, e.g., *Ussery* v. *United States*, 296 F. 2d 582, 586–587 (C.A. 5, 1961); *Stewart* v. *United States*, 363 F. 2d 355 (C.A. 6, 1966); *Stephen L. Zolnay*, 49 T.C. 389, 395 (1968); *Commissioner* v. *Ide*, 335 F. 2d 852, 855 (C.A. 3, 1964), affirming 40 T.C. 721, 724 (1963); *Howard Littman*, 42 T.C. 503 (1964); *Woddail* v. *Commissioner*, 321 F. 2d 721 (C.A. 10, 1963), affirming a Memorandum Opinion of this Court; *Alex L. Sweet*, 40 T.C. 403 (1963); *Chander P. Bhalla*, 35 T.C. 13 (1960).

Petitioner contends that the purpose of the grant involved was solely to enable him to further his education in his individual capacity; and to provide training for him in coping with the problems incident to desegregation; and that the payments in controversy in no way represent compensation to him for services rendered or to be rendered to Municipal in the past, present, or future. It is petitioner's position, in essence, that under title IV, sec. 405, of Pub. L. 88–352, the origin of the funding of the program in question, the grant was made for the participating teachers and the teachers "alone," with "no strings" attached, and while Municipal was technically the grantor, it was no more than a conduit for title IV funds from HEW to the participating teachers.[5] Respondent, in opposition, urges that the amounts paid to petitioner were made to enable him to pursue

---

[5] Under this section of the law, upon application of a school board, the Commissioner of Education is authorized to make grants to defray the cost of giving inservice training to teachers and other school personnel in dealing with problems incident to desegregation. Funds for this prorgam are provided by HEW and the school personnel are paid on a per diem basis while participating in the program.

studies or research primarily for the benefit of the grantor, and hence no part of such amounts are excludable from his gross income. Secs. 61 and 117(a), I.R.C. 1954.

The primary-purpose test requires a determination of the raison d'être of the payment in question, that is, was it to further the education and training of the recipient or was it in reality payment for services which directly benefited the payor? Manifestly, such a determination depends upon whose purpose is adopted as the standard of measurement and frequently more than a single purpose is involved.[6] *Elmer L. Reese, Jr.*, supra at 411. Considering the total factual context involved, it would be unrealistic to conclude that the school board of Municipal would have instituted the program if they had not expected the school system to derive the principal benefit. In our view, Congress intended the grants made under title IV, sec. 405, of Pub. L. 88–352 to improve the quality of education in school systems undergoing desegregation. S. Rept. No. 872, 88th Cong., 2d Sess., pp. 1, 37, 38 (1964). And it was to this end that Municipal applied to HEW for the funds paid to petitioner and the other participants in the program. Officials of Municipal were concerned mainly with the safe transportation of students, discipline, underachievement, methods of instruction, and related problems in the desegregated school system and how to deal with them, and because of their concern with these problems and the possible answers, were willing to pay for the study program which they authorized, including the remuneration paid to petitioner. We believe that Municipal anticipated not only receiving the benefit of the training of their teaching personnel in the future, but also obtaining valuable information from such teachers and supervisors while actually participating in the program. It is noteworthy that the value of this inservice training program was retained by the making of reports of the seminars by various committees thereof which were circulated and made available to other teachers and board members of Municipal. Neither the statute nor legislative history indicates that Congress intended to permit exclusion of payments that are actually compensation for the performance of services for the primary benefit of the employer. See H. Rept. No. 1337, 83d Cong., 2d Sess., pp. 16–17 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 18, 189 (1954).

Admittedly, petitioner's training under the program may have made a substantial contribution to the education of the students in

---

[6] This Court has recognized the difficulties involved in the application of that part of the regulation relating to whether a payment is "primarily for the benefit of the grantor." See *Aloysius J. Proskey*, 51 T.C. 918, 925–926 (1969), and cases cited therein.

Municipal. But the existence of such a contribution is hardly inconsistent with our finding that the payments were made "primarily for the benefit of the grantor." See *Jerry S. Turem*, 54 T.C. 1494, 1506–1507 (1970). Similarly, it is not particularly significant that petitioner derived substantial educational benefits from the program. We do not doubt that participation in the program involved provided highly valuable orientation in the various problems related to desegregation of schools. Yet virtually all well-organized programs of this nature provide valuable training. Obviously, a step in improving the quality of the education in a school system is improving the ability of school personnel to deal with the problems involved. Nothing in section 117 requires that an amount paid as compensation for services rendered be treated as a nontaxable fellowship grant merely because the recipient is increasing his knowledge in his trade, business, or profession. Whatever training petitioner received during the period he attended the seminars was merely incidental to and for the purpose of facilitating the harmonious and efficient desegregation of the public school system in Mississippi. Per diem payments are not rendered nontaxable because the performance of the services (here the participation in the inservice program) provides the recipient with valuable training and experience in his chosen profession. See *Aloysius J. Proskey*, 51 T.C. 918, 925 (1969) ; *Ethel M. Bonn*, 34 T.C. 64, 73 (1960) ; *Woddail* v. *Commissioner, supra.* The grantor board of education not only stood to gain substantial future benefit from the inservice program but was also receiving immediate benefit as the participants, including petitioner, made current use of their training. In our view, the primary benefit inured to the board of education and the school system, thereby enabling Municipal to improve the education of the students located in its district. As stated by the "director of the program" and assistant superintendent of Municipal, Bill Lee, on direct examination: "if you improve a teacher, you improve a school."

We believe that under the circumstances herein, Municipal and not HEW must be considered the grantor of the payments. Apart from establishing minimum educational requirements for participation in the program, HEW left selection of the recipient of the per diem payments entirely to Municipal. The latter's program director, Billy Lee, not HEW, was directly responsible for the teacher's duties under the program. Although HEW's grant to Municipal may well have been disinterested and noncompensatory in nature, Municipal's grant to petitioner was quite different. The payments were made in return for petitioner's services and are therefore fully includable in his gross

**390**

income. *Jerry S. Turem, supra* at 1506; *Majorie E. Haley*, 54 T.C. 642, 647 (1970) ;[7] *Frederick Fisher*, 56 T.C. 1201 (1971).

Petitioner, relying on *Bingler* v. *Johnson, supra,* contends that the money received by him can in no way be considered to be a continuation of the payment of his salary by Municipal as the inservice training program in which he participated was conducted at hours other than regular school or working hours; that the amounts received by him were relatively small and payments were not commensurate with his salary. It is sufficient to say that the per diem payments to petitioner were tied inextricably to his status as a full-time teacher in Municipal. We do not deem the time when study courses were held as determinative. Petitioner, who bears the burden of proof, has not adduced any evidence relating to the scale of payments for participation in the program. We do not know whether the aggregate amount of the per diem payments was dependent on petitioner's financial need as is usually true of fellowship grants. *Aloysius J. Proskey, supra* at 924. Nor do we find any supporting evidence in the record that the per diem payments under review were not commensurate with his salary. Moreover, we find no legislative or judicial requirement that wage supplements be commensurate with the recipient's salary in order to be classified as compensation.

We find no merit in petitioner's argument that he was not contractually obligated to continue in the employ of Municipal after completing the inservice program and hence the payments in question could not be associated with future services to his employer. We are mindful that of the 280 participating classroom teachers in the program, about 65 resigned from the school system within the year following the program and took with them some of the benefits which they may have derived from the project. However, notwithstanding this high degree of attrition among the teaching personnel, we believe that Municipal harbored a clear expectation that teachers in its employ prior to desegregation would remain after the completion of the in-

---

[7] In *Haley,* the Court stated at p. 647 :

"The petitioner also attempts to support an exclusion for 75 percent of her educational grant under the theory that the grantor was the United States, not the State of Oregon. Her argument is that, as she had no employment relationship with the Federal Government, the grant, to the extent funded by Federal moneys under a 75-percent matching program, could not be in consideration of her 'past, present, or future services' to the Federal Government. Petitioner's argument must fail as her agreement was not with the Federal Government and as she did not receive funds from the Department of Health, Education, and Welfare or any other Federal Agency. The Federal Government was not the grantor. Cf. *Norman R. Williamsen, Jr.,* 32 T.C. 154 (1959). The grantor of the funds was the State Commission, and the funds were distributed from the general funds of the State of Oregon."

service training program. See *Reiffen* v. *United States*, 376 F.2d 883 (Ct. Cl. 1967). More important however, the participating personnel, including petitioner, were not on an educational leave status, but were still teaching while being paid additional amounts to participate in the program on a per diem basis of remuneration. See *John E. Mac-Donald, Jr.*, 52 T.C. 386, 393 (1969), where in holding that the grant to the taxpayer was primarily for the benefit of the employer-grantor, we stated that the Supreme Court in *Bingler* v. *Johnson, supra*, "certainly did not lay down any indispensable requirement that there be a contractual undertaking" to return to the employ of the payor.

In support of his position, petitioner relies mainly on *Aileene Evans*, 34 T.C. 720 (1960). We have carefully considered this case and find it distinguishable on its facts.[8] In *Evans* we held that monthly stipend payments made by the Department of Mental Health of the State of Tennessee to the taxpayer while she was enrolled in a psychiatric nursing program at the University of Tennessee were excluded from gross income under section 117. In so holding, we noted that the amounts paid to the taxpayer were based solely upon her financial needs in order to undertake the training, and secondly, that the primary purpose of the payments to the taxpayer was to enable her to obtain psychiatric training in her individual capacity and were not primarily compensation for services rendered or to be rendered in the future. Here, there is no evidence that the per diem amounts paid to petitioner were determined solely according to his financial needs. Indeed, there is no indication that the per diem sums received by petitioner differed from the amounts paid to all of the participants in the program. Furthermore, as previously discussed, the primary purpose of the payments made to petitioner was not to enable him to obtain training in his individual capacity in order to further his education, but rather to enable him to obtain training for the benefit of Municipal.

On all the facts and circumstances herein, we must conclude that the payments involved were received as taxable compensation for services rendered under section 61, and not as a fellowship excludable under section 117.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

[8] See *Lowell D. Ward,* 55 T.C. 308, 311 (1970), where we stated that the Supreme Court in *Bingler* v. *Johnson, supra* at 756, fn. 30, has cast doubt on the reasoning in *Evans,* and that we do not believe that it is any longer sound precedent. See also Rev. Rul. 70–283, 1970–1 C.B. 26.