FREDERICK A. BIEBERDORF AND SANDRA W. BIEBERDORF, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7053–71.    Filed April 24, 1973.

*Hugh O. Mussina,* for the petitioners.

*John W. Dierker,* for the respondent.

WILES, *Judge:* Respondent determined deficiencies in petitioners' income tax for the years 1968 and 1969 in the amounts of $278.12 and $718.62, respectively. The issue is whether the petitioner is entitled to exclude $1,500 from his gross income in 1968 and $3,600 from his gross income in 1969 as fellowship or scholarship grants under section 117 [1] while he was engaged in a training program at the University of Texas Southwestern Medical School (hereinafter called Southwestern).

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners Frederick A. Bieberdorf (hereinafter called petitioner) and Sandra W. Bieberdorf are husband and wife who were legal residents of Dallas, Tex., when the petition was filed. They filed their joint income tax returns for 1968 and 1969 with the district director of internal revenue in Dallas, Tex.

Petitioner was a licensed physician during the years in issue. He had completed 1 year of internship in internal medicine, and 1 year of residency in internal medicine, both at Parkland Memorial Hospital in Dallas, Tex. Petitioner also performed 2 years of service with the National Institute of Health at Bethesda, Md., as an officer of the U.S. Public Health Service.

Southwestern received a money grant from the National Institute of Health (hereinafter called NIH) for a program of graduate training in gastroenterology [2] and liver diseases. The school was free to select any person who had a Ph.D. or M.D. for the program. The program was designed to prepare physicians for a career in academic medicine within the specialty areas of gastroenterology and liver dis-

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.

[2] Gastroenterology is the study of the stomach and the intestines, especially in respect of their diseases and pathology.

eases. The main stress of the training program was on research, with 20 to 30 percent of the time scheduled to be spent on clinical activities. The application submitted to NIH for funding of the training grant described the program in part as follows:

The major commitment during the period with us is devoted to research. Research activities are closely supervised by the full-time faculty members of our group at The University of Texas Southwestern Medical School. Each faculty member has only one or two trainees, assuring close personal contact and adequate time for direction. In general, trainees begin to work on a project which is already underway. As independent ideas and interests begin to emerge, trainees are encouraged to undertake new projects of their own choosing. Although each trainee is involved primarily in the major field of research of his faculty preceptor, he has ample opportunity to become critically aware of the overall research interests and activities of the entire group. This is fostered by close contact of trainees with each other and staff members, and by research conferences in which each trainee presents his results to the entire group, thus permitting group discussion, criticism and suggestions by staff and trainees.

*   * `   *   *   *   *   *

Trainees are encouraged to take special courses given at the medical school or at Southern Methodist University. * * *

Petitioner entered the program in August 1968. He was not a candidate for a degree. He spent 20 to 25 percent of his time doing clinical work as a physician in Parkland Memorial Hospital. The clinical work, in part, consisted of examining patients in consultation. Petitioner did not prescribe or administer treatment on his own initiative. In addition to seeing patients, petitioner's clinical work consisted of attending conferences in which gastroenterology cases were discussed and learning special diagnostic techniques utilized in that specialty area. Such work was beneficial to the patients at the hospital and to Parkland Memorial Hospital. The remaining 75 to 80 percent of petitioner's time in the program was spent performing research in the area of gastroenterology. The results of petitioner's research were published in the Journal of Clinical Investigation in August 1972.[3] Upon completion of the training program, petitioner accepted a position on the staff of Southwestern; however, such employment was not a condition of acceptance into the program.

Parkland Memorial Hospital is operated by the Dallas County Hospital District for the purpose of providing medical care for the indigent and needy citizens of Dallas County, Tex. Southwestern entered into an interagency agreement with the Dallas County Hospital District whereby it would furnish qualified medical personnel for the performance of medical services at Parkland Memorial Hospital. Petitioner entered into a nonremunerative contract with Parkland Memorial Hospital for the period of the training program.

---

[3] Petitioner's research was combined with two other individuals, Phillip Gorden and John S. Fordtran.

Petitioner was paid by Southwestern from funds furnished by the NIH grant. Federal income tax was withheld from these payments. Southwestern also paid for petitioner's malpractice insurance during the training program for coverage in the amount of $5000/$15,000. Faculty members of Southwestern during the period were covered for $100,000/$300,000.

All amounts paid to petitioner under the NIH grant represent amounts paid for the primary purpose of furthering the education and training of the recipient and do not represent amounts paid as compensation for services or research primarily for the benefit of the grantor.

OPINION

The issue in this case is whether the petitioner is entitled to exclude certain stipends from his gross income for 1968 and 1969 as fellowship or scholarship grants under section 117.

Section 117 excludes from gross income any amount received as a scholarship or fellowship grant. For individuals who are not candidates for a degree, such exclusion is limited to $300 per month for each month during the taxable year that the recipient received amounts under the scholarship or fellowship grant. Section 1.117–4(c) of the Income Tax Regulations provides that the following payments or allowances shall not be considered to be amounts received as scholarship or fellowship grants for the purpose of section 117:

(c) *Amounts paid as compensation for services or primarily for the benefit of the grantor.* (1) Except as provided in paragraph (a) of § 1.117–2, any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research, if such amount represents either compensation for past, present, or future employment services or represents payment for services which are subject to the direction or supervision of the grantor.

(2) Any amount paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research primarily for the benefit of the grantor.

However, amounts paid or allowed to, or on behalf of, an individual to enable him to pursue studies or research are considered to be amounts received as a scholarship or fellowship grant for the purpose of section 117 if the primary purpose of the studies or research is to further the education and training of the recipient in his individual capacity and the amount provided by the grantor for such purpose does not represent compensation or payment for the services described in subparagraph (1) of this paragraph. * * *

The validity of these regulations has been upheld by the Supreme Court of the United States. *Bingler* v. *Johnson,* 394 U.S. 741 (1969). If any of the circumstances of the regulations are present, the amount paid must be included in petitioner's income. Respondent contends that the amounts paid petitioner are includable in income as compensation for present or future services or as amounts paid for research primarily for the benefit of the grantor, Southwestern.

Petitioner did perform some present services during the training period. He spent 20 to 25 percent of his time performing clinical services at Parkland Memorial Hospital which were beneficial to that institution. Also, Southwestern was required, by virtue of the inter-agency agreement, to supply medical personnel for running the hospital. Nonetheless, the services performed by the petitioner formed only a small part of a program designed to support the personal pursuit of study and research by the petitioner.

As support for his position that the amounts received by the petitioner should be included in gross income as compensation for present services, respondent cites *Frederick Fisher*, 56 T.C. 1201 (1971), wherein this Court held that amounts paid to a resident physician in psychiatry were includable in gross income as compensation for services. The facts of the *Fisher* case are readily distinguishable from the present situation. In *Fisher*, the resident physician performed extensive services for the psychiatric center including full patient care, call duty during which the resident had "primary responsibility for the entire hospital," and instruction of medical students. Most of his time was spent performing such services. In sharp contrast, petitioner was not a resident physician and the services performed by him at Parkland Memorial Hospital were of a minor nature that were attuned to the furtherance of the personal knowledge of the petitioner. Petitioner spent only 20 to 25 percent of his training time performing such clincial services. Furthermore, of the 20 to 25 percent of time spent by petitioner in performing clinical services, only a portion thereof was devoted to seeing patients in consultation. The remainder of such time was spent performing such services. In sharp contrast, petitioner was in the gastroenterology area, such as gastroscopy and esophagoscopy. Petitioner was not required to take calls nor was he required to maintain regular hours at the hospital. Petitioner was not responsible for the care of patients. Dr. Fordtran testified that he was the doctor responsible for the care the patients received. Therefore, the *Fisher* case is readily distinguishable from the present case and not controlling. See also *Clarence Peiss*, 40 T.C. 78 (1963), wherein this Court held that amounts received on a research grant were excludable from gross income even though the taxpayer spent about 25 percent of his time fulfilling a teaching obligation to the grantor.

Appeal in this case lies to the Fifth Circuit. Therefore, the recent decision of *Parr* v. *United States*, 469 F. 2d 1156 (C.A. 5, 1972), should be considered. In *Parr*, the Fifth Circuit held that two doctors participating in hospital residency programs were not allowed to exclude stipends received from their gross income under section 117. For the same reasons noted above with regard to the *Fisher* decision, *Parr*, is distinguishable from the present situation. The petitioner/doctors in

*Parr* (both in residency programs) made rounds, saw patients, took histories, proposed diagnosis, gave pre- and post-operative care, and assisted in and performed surgery under the supervision of faculty members. Further, it was found that (1) the facilities would have had to hire other personnel to perform such duties if the resident doctors did not do so and (2) the hospitals involved treated the resident doctors in many respects as employees. As noted above with regard to the *Fisher* case, the present situation is entirely different. To paraphrase the *Parr* decision, in the present case we have a situation in which the services performed do not exceed "the incidental duties which are compatible with characterization of a stipend as a scholarship or fellowship."

Petitioner was under no contractual obligation to accept employment with Southwestern nor the NIH upon completion of the training program. Respondent contends that the amounts paid by Southwestern were compensation for future services because it hoped that trainees would accept positions on their staff as permanent faculty members. When a grantor establishes a program for the purpose of providing itself with employees at some future date, and there is a clear expectation that the trainee will accept such employment, payments made to the grantees are considered to be compensation for future services. This is so even though there is no formal contract to accept future employment. *Lawrence A. Ehrhart*, 57 T.C. 872 (1972), affd. 470 F. 2d 940 (C.A. 1, 1973) ; *Robert W. Willie*, 57 T.C. 383 (1971) ; *John E. MacDonald, Jr.*, 52 T.C. 386 (1969). Those cases, however, involved situations in which the students were employees of the grantor before (and often during) the training period and the grantors maintained strong economic ties with the students. The evidence indicates that neither NIH nor Southwestern established this program for the purpose of training future employees. On the contrary, the purpose of the Southwestern program was to train students in academic medicine with nothing more than the hope that some of them might become associated with the medical school upon completion of the program. Cf. *William Wells*, 40 T.C. 40 (1963). Petitioner did accept a position on the staff of Southwestern upon completion of the training program. The totality of the evidence in this case, however, indicates that petitioner was in no way obligated to such employment nor was there any real basis on which Southwestern could base an expectation that he was.

The one question remaining is whether the research performed by the petitioner was in furtherance of his education and training or was primarily for the benefit of the grantor. When a university has a commitment to perform research for a third party on a particular project, any payments to students to perform such services are considered to be compensation under section 117. *Stephen L. Zolnay*, 49 T.C. 389

(1968) ; *Howard Littman*, 42 T.C. 503 (1964) ; *Frank Thomas Bach-mura*, 32 T.C. 1117 (1959). Respondent contends that petitioner's research was performed pursuant to Southwestern's interagency agreement to perform research for Parkland Memorial Hospital. That agreement requires Southwestern to supply medical personnel for the running of Parkland Hospital. The requirement for specific medical research is less clear. In any event, Dr. Fordtran testified that the patient on whom petitioner performed most of his research was referred to the school for study through the NIH. That is, the research project was not performed to fulfill a commitment to Parkland Hospital. The findings of such research would be of benefit to that hospital; however, they would be of no more specific benefit to them than to any other medical institution having access to the petitioner's published findings. The benefits of the petitioner's work were for the whole national academic community, rather than the grantor. *Louis C. Vaccaro*, 58 T.C. 721 (1972). Dr. Fordtran also testified that petitioner was free to refuse to work on the research project offered by the school. The application for the training grant to the NIH indicates that the trainees are encouraged to undertake research projects of their own choosing after an initial stage of closely supervised research on a project already underway in the school. Trainees are also encouraged to take special courses given at the medical school or Southern Methodist University. Thus, the evidence indicates that the program was established to provide training in research for trainees, and not to obtain the services of individuals on research projects that the medical school was committed to perform.

The basic premise for inclusion of stipends in the gross income of recipients is that such amounts are received as a quid pro quo for services performed or to be performed for the grantor. That is, there must be some strings tied to the payments. The totality of the evidence in this case indicates that Southwestern established the program to provide the opportunity for trainees to become proficient in the field of academic medicine.

It is significant that petitioner did not, to any notable degree, perform services relating to patient care. This factor distinguishes the present situation from many of the cases decided by this Court in this area. See, e.g., *Frederick Fisher, supra*. There were no requirements that the students perform present or future services or research for the benefit of the grantor, other than as incidental to the furtherance of the student's individual education and training.

We hold that petitioner is entitled to exclusions of $1,500 for 1968 and $3,600 for 1969 as scholarship or fellowship grants.

*Decision will be entered for the petitioners.*