GERALDINE F. JOHNSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Johnson v. Commissioner
Docket No. 1292-76.
United States Tax Court
T.C. Memo 1978-90; 1978 Tax Ct. Memo LEXIS 425; 37 T.C.M. (CCH) 418; T.C.M. (RIA) 780090; March 6, 1978, Filed Geraldine F. Johnson, pro se. Virginia C. Schmid, for the respondent. RAUM
MEMORANDUM FINDINGS OF FACT AND OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's 1972 individual Federal income tax in the amount of $1,274.02. After concessions, the only issue for decision is whether petitioner is entitled to exclude from her gross income any part of the $7,000 which she received from the Chicago Board of Education while she was a participant in an internship program for potential school principals. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts *426 and accompanying exhibits are incorporated herein by this reference. Petitioner Geraldine F. Johnson resided in Chicago, Illinois, at the time her petition in this case was filed. She filed her 1972 individual Federal income tax return on or about May 23, 1973, with the Internal Revenue Service Center, Kansas City, Missouri. For approximately 15 years prior to January 1972, petitioner was employed by the Chicago, Illinois, Board of Education (the "Board"). As of January 1972 her position was that of staff assistant in the Department of Government Funded Programs. At that time, she was listed on the 1970 Principals Eligibility List, which meant that she had successfully met all the prerequisites for appointment as a principal of a school in the Chicago public school system. Since appointment of principals was controlled in part by community school boards as well as the Board, however, she could not be guaranteed of ever obtaining a principalship merely because her name appeared on the Principals Eligibility List. In the spring quarter of 1969, petitioner was admitted as a candidate for the Ph.D. degree in the Division of the Social Sciences, Department of Education, University *427 of Chicago. She continued to work towards her Ph.D. degree at the University of Chicago, although not continuously, up through the time of trial. During the winter quarter of 1972 (ending March 18, 1972), petitioner was registered for a single course in the Ph.D. program. She did not register for any courses during the spring quarter of 1972, but prepared for certain required examinations which she took in the summer of 1972. During the year 1972, the Board participated in a program (the "internship program") funded by the Bureau of Educational Personnel Development, United States Office of Education ("USOE"), in combination with the Midwest Administration Center, University of Chicago ("MAC"), which provided paid internships for 21 persons then on the 1970 Principals Eligibility List. The purpose of the program was to provide one semester of on-the-spot training for potential city school principals as well as to further the educational goals of MAC in the area of school administration. The program was conceived by MAC, and administered by MAC with USOE funds. By agreement with MAC, the Board participated in the following manner. First, the Board selected individual schools *428 to be the training sites, primarily on the basis of their principals' reputations for effective and efficient administration. Secondly, the Board invited employees listed on the 1970 Principals Eligibility List to apply for internships, and selected 21 applicants, including petitioner, for internships. Each of the successful applicants was "transferred on-loan" from his or her regular duties to participate in the internship program. Each was paid a stipend of $7,000 in lieu of his or her regular salary for the semester. Petitioner received her stipend during the period of approximately January 31, 1972, through June 15, 1972, by way of bi-weekly checks from the Board; the Board deducted Federal and state withholding taxes and pension contributions, and included the gross amount of the stipend as "Wages Paid Subject to Withholding 1972" on the Form W-2 sent to petitioner for 1972. (The net amount actually paid petitioner from her stipend was $5,000.) While on "loan", petitioner's regular position was held open for her, and she continued to receive her usual employee benefits. All of the Board's expenses in connection with the internship program, including the costs of petitioner's *429 stipend, were reimbursed to the Board by MAC from funds provided by USOE. As a participant in the internship program, petitioner was assigned to the John Foster Dulles School ("Dulles School"), under the supervision of Valcar A. Bowman, Principal. She spent approximately 50 percent of her time at Dulles School; while there, she spent more than 90 percent of her time observing the princpal's actions and participating in various school activities, and only rarely performed duties assigned by the principal (principally supervising school corridors during entrance times). When she was not at Dulles School, petitioner reported to the University of Chicago for classroom and other training programs, or participated in field trips organized by MAC for interns. Petitioner and Mr. Bowman made regular oral reports to MAC concerning petitioner's internship, and MAC prepared written reports based in part upon these oral reports from the Dulles School. At the conclusion of her internship, petitioner returned to her position as staff assistant in the Department of Government Funded Programs of the Board. The purpose of the internship program, as stated in the Board's notice soliciting applications, *430 was to allow interns to "participate in actual field experiences with veteran principals so as to better prepare present candidates for principalships when they are assigned". Although petitioner was not entitled, nor did she expect, to receive appointment as a school principal immediately upon completion of the internship, it is reasonable to conclude that both the Board and petitioner anticipated that petitioner would at some time become a principal in the Chicago school system. Subsequent to her return to her regular duties, on or about April 4, 1973, petitioner became the principal at the John S. Pershing Elementary School, and she remained in that position at the time of trial. Participation in the internship program was not a requirement for the Ph.D. degree which petitioner sought, and petitioner did not in fact receive any credit towards that degree by virtue of her participation in the internship program. Petitioner, in her 1972 individual Federal income tax return, claimed a deduction of $5,000 on account of the stipend she received from the Board during her participation in the internship program. The Commissioner, in his Notice of Deficiency dated November 14, 1975, disallowed *431 the claimed deduction in full, but allowed an exclusion from petitioner's income in the amount of $1,500 on the ground that the stipend constituted a fellowship grant to a non-degree candidate. By amendment to his answer to the petition, as amended, the Commissioner now seeks to disallow any deduction or exclusion from gross income on account of petitioner's stipend. OPINION For approximately 15 years prior to January 1972, petitioner had been an employee of the Chicago Board of Education. During that time she had completed the prerequisites for appointment as a school principal and had been placed on the 1970 Principals Eligibility List. Between January 1972 and June 1972, petitioner participated in an internship program funded by the United States Office of Education and administered by the Midwest Administration Center of the University of Chicago. As an intern, she was placed in an elementary school within the Chicago public school system where she obtained on-the-spot training in the administration of an urban public school, primarily through observation of an experienced and highly-respected school principal. She performed virtually no services for the school district *432 during her internship; she was paid a stipend of $7,000 by the Board in lieu of her regular salary for the period from January through June. The question which we must resolve is whether, pursuant to section 117, I.R.C. 1954, petitioner is entitled to exclude from her gross income any part of the $7,000 stipend which she received in connection with her internship. Section 117 permits an exclusion from gross income of amounts received as "scholarship" or "fellowship" grants, but those terms do not include "compensation for past, present, or future employment services" and amounts paid to an individual "to enable him to pursue studies or research primarily for the benefit of the grantor". Section 1.117-4(c), Income Tax Regs.; Bingler v. Johnson,394 U.S. 741; MacDonald v. Commissioner,52 T.C. 386, 392. The issue presented is one of fact, and we have held that the test for determining whether a payment is a "scholarship" or a "fellowship" within the meaning of section 117 is whether the grantor's primary purpose in making the payments was to compensate the employee for services rendered or reasonably expected to be rendered. MacDonald v. Commissioner,supra,52 T.C. at 392; *433 Reese v. Commissioner,45 T.C. 407, 411, affirmed 373 F. 2d 742 (C.A.4); Turem v. Commissioner,54 T.C. 1494, 1505. Compare Steiman v. Commissioner,56 T.C. 1350, 1354-1355. We hold on the basis of the record here that petitioner is not entitled to any exclusion from gross income on account of her $7,000 stipend. At the outset, we note that the Board must be regarded as the grantor of petitioner's stipend because the Board selected the participants in the internship program, paid their stipends, and accorded them other employee benefits as well as holding their jobs open for them. It is irrelevant, therefore, that the Board was reimbursed by MAC and USOE for all its expenses connected with the internship. Willie v. Commissioner,57 T.C. 383, 389. And we find it equally clear that petitioner cannot qualify for the unlimited exclusion accorded candidates for degrees, section 117(a)(1) and (b)(2)(B), because, although she was indeed a candidate for the Ph.D. degree at the University of Chicago, her internship was not a part of her degree program: she was not required by her Ph.D. program to undertake the *434 internship, nor was she given credit therefor toward her degree. Weiner v. Commissioner,64 T.C. 294, 297-299. The most petitioner may be entitled to exclude on account of her stipend, therefore, is $300 for each of the five months of the internship. Section 117(b)(2)(B). We are convinced on the basis of the evidence presented that petitioner performed no valuable services for the Board during the five months of her internship and that her stipend was not intended as compensation for any such current services. Petitioner spent only about one-half of her time in the Dulles School, and while there she did no more than observe the actions of the school principal. Any corridor supervision which she may have done was incidental and insubstantial. Bailey v. Commissioner,60 T.C. 447, 452-453. Compare Hembree v. United States,464 F. 2d 1262, 1264-1265 (C.A. 4); Weinberg v. Commissioner,64 T.C. 771, 778; Fisher v. Commissioner,56 T.C. 1201, 1215; Proskey v. Commissioner,51 T.C. 918, 925. Unfortunately for petitioner, however, we think that the evidence also establishes that the Board's *435 primary purpose in granting her stipend was to improve the calibre of its pool of potential school principals and, thereby, the quality of the schools in which they would serve. It is true that petitioner was not guaranteed a position as school principal after completion of the internship, but her current job was held open and she was a candidate listed on the 1970 Principals Eligibility List from which principals were to be chosen. The Board selected petitioner for an internship in order to make her better qualified as a principal, and it did in fact subsequently appoint her to a principalship. She is in much the same position as if the Board had paid for her to study at a university or other unrelated institution, in the expectation that such study would improve the quality of her future service to the Board. But it has been repeatedly held that payments in compensation for such future service cannot be considered "fellowships" or "scholarships" within the meaning of section 117. Bingler v. Johnson,supra,394 U.S. at 757-758; Buhr v. Commissioner,     F. 2d    , 77-2U.S.T.C. par. 9633 (C.A. 7); Ussery v. Commissioner,296 F. 2d 582, 586-587 *436 (C.A. 5); MacDonald v. Commissioner,supra,52 T.C. at 393; Turem v. Commissioner,supra,54 T.C. at 1507; Haley v. Commissioner,54 T.C. 642, 646-647. And even though the Board exacted no commitment from petitioner that she would return to the Chicago public schools at the completion of her internship, the Board's expectation that she would do so is sufficient to render the stipend payments compensatory in nature. MacDonald v. Commissioner,supra,52 T.C. at 393. See Buhr v. Commissioner,supra, 77-2 U.S.T.C. 88,123-88,124. We conclude, therefore, that petitioner is not entitled to exclude from her gross income any part of the $7,000 stipend which she received from the Board during 1972. Because of concessions, Decision will be entered under Rule 155.