JAMES J. DUFFEY, JR., AND MAUREEN O. DUFFEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Duffey v. Commissioner
Docket No. 1595-79.
United States Tax Court
T.C. Memo 1981-325; 1981 Tax Ct. Memo LEXIS 415; 42 T.C.M. (CCH) 226; T.C.M. (RIA) 81325; June 24, 1981. *415 Held: Amounts paid to P by the University of Minnesota for research performed are not excludable from gross income under section 117(a). Held further: Deduction for home office expenses disallowed. James J. Duffey, Jr. pro *416 se. Scott Taylor, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined a deficiency of $ 2,914.06 in petitioners' 1976 Federal income taxes. Due to a concession by petitioner, the issues remaining for our determination are: (1) Whether payments received by petitioner James J. Duffey, Jr., for research performed for the Minnesota Research and Development Center constituted a fellowship or scholarship properly excludable from gross income under section 117. [1]
(2) Whether petitioners are entitled to a deduction for expenses associated with a home office which petitioner James J. Duffey, Jr., used while working on his research project. FINDINGS OF FACT Some of the facts have been stipulated. These facts together with the exhibits attached thereto are incorporated herein by this reference. Petitioners James J. Duffey, Jr., and Maureen O. Duffey, husband and wife, resided in St. Paul, Minnesota at the time of the filing of their petition in this case. A timely joint 1976 Federal *417 income tax return was filed by petitioners. During 1976 James J. Duffey, Jr. (hereinafter petitioner) was a Ph.D. degree candidate at the University of Minnesota majoring in higher education. The educational program leading to attainment of the Ph.D. degree typically requires the candidate's participation in various practicum experiences which are designed to provide the candidate with an opportunity to apply knowledge to ongoing research and development projects. In the spring of 1974 petitioner, as a first year graduate student, was required by his program adviser to teach a methods course. Petitioner also participated in a motivation workshop at Sandstone Correctional Facility. In the summer of 1976 petitioner was hired by Professor Brandon Smith, the director of the Minnesota Research and Development Center (MRDC), to perform research on a project concerning a funding formula for adult vocational education. The project was initiated by the director of the research unit at the State Department of Vocational Education, Mr. Mel Johnson. The purpose of the project was to comply with a request of the state legislature to update the concept of funding vocational programs so *418 that the funding formula would be more equitable among various schools. MRDC is operated under the auspices of the University of Minnesota. From July 1, 1976 to September 15, 1976 petitioner worked at least 40 hours per week for MRDC and for the remainder of 1976 petitioner's work at MRDC was on a part-time basis (at least 20 hours per week). Petitioner's compensation for his research was computed on the basis of an hourly wage. The funding formula which petitioner was to evolve was the end product of the gathering and analysis of various educational institution data including student enrollment and cost information. While petitioner would pose various questions to his superiors at MRDC concerning analytical technique, the analytical design for the data and its collection were within petitioner's discretion. The product of petitioner's research was not ultimately used in effecting an appropriate funding formula as significant controversy erupted over the reliability of the data used. MRDC does significant educational research, much of which is accomplished through the efforts of employed students. Petitioner's employment at MRDC was continually conditioned on the satisfactory *419 performance of his duties. While receiving an hourly wage for his services, petitioner did not receive any academic credit for the research performed. During 1976 the University of Minnesota paid petitioner $ 4,565 as compensation for research performed at MRDC. [2] Petitioner excluded this amount from his gross income alleging that the payment represented a nontaxable fellowship grant. Federal income taxes were withheld on the amounts paid to petitioner by the University of Minnesota. During 1976 petitioner used a section of the basement of his home as an office where he spent 10 to 15 hours per week, usually on weekends and at night, working on the vocational education research project. The maintenance of this home office was not required by MRDC. Petitioner was provided with an office by his employer. On his 1976 return petitioner deducted $ 240 *420 as a home office expense. In his notice of deficiency dated November 13, 1978, respondent determined that payments made to petitioner by the University of Minnesota for his services at MRDC were properly includable in income. Additionally, petitioner's deduction for home office expense was disallowed in its entirety by respondent. OPINION Section 117(a) excludes from gross income amounts received as a scholarship or fellowship. Where an individual is a degree candidate, section 117(b)(1) limits the exclusion by declaring it inapplicable to any amount received which represents payment for services in the nature of part-time employment required as a condition to receiving the scholarship or fellowship grant. However, if certain services are required of all candidates for a particular degree as a condition to receiving such degree, such services are not to be regarded as part-time employment. A fellowship grant is an amount paid or allowed to, or for the benefit of, in individual to aid him in the pursuit of study or research. Section 1.117-3(c), Income Tax Regs.Section 1.117-4(c), Income Tax Regs., provides, in part, that payments made as compensation for past, present, *421 or future employment services are not in the nature of scholarship or fellowship grants. The Supreme Court has specifically upheld the validity of the latter regulation declaring that its content comports "with the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." Bingler v. Johnson, 394 U.S. 741, 751 (1969). Under the regulation, it is necessary to determine whether the primary purpose for making the grant was to enable the recipient to further his education or training or whether the primary purpose was to compensate him for services rendered. Brubakken v. Commissioner, 67 T.C. 249, 255 (1976); Weinberg v. Commissioner, 64 T.C. 771, 776 (1975). Petitioner seeks to exclude from gross income $ 4,565 paid to him in 1976 by the University of Minnesota for research he performed for MRDC. He argues that the payment of moneys for his research was intended primarily to enable him to pursue research so that he could participate in a learning experience leading to his Ph.D. degree. *422 Any benefits to the MRDC, he claims, were merely incidental. Respondent insists that the payments made to petitioner were intended to compensate him for the services he rendered which were primarily for the benefit of the MRDC. After a careful review of the record, we conclude that the primary purpose of the payments made by the University of Minnesota was to compensate petitioner for his research services. Evidence adduced at trial points to the fact that MRDC performs significant educational research, much of which is accomplished through the efforts of employed students. We thus are inclined to believe that MRDC anticipated more than an incidental benefit from the research performed by petitioner. See Weinberg v. Commissioner, supra, at 778; Vaccaro v. Commissioner, 58 T.C. 721, 728 (1972). In fact, it is apparent from the record that petitioner's research project was initiated at the request of the state legislature in order to make the vocational funding formula more equitable among various schools. Thus, petitioner's work was pivotal in MRDC's attempt to satisfy the legislative body's mandate. While petitioner's research was not *423 ultimately used to evolve a useful funding formula, such inutility resulted from a subsequent controversy over the accuracy of the data gathered. The original plan of MRDC involved a serious attempt to comply with the legislative desire to effect a more equitable distribution of vocational education funds. We view such an attempt as more closely aligned with a primary intent to compensate petitioner for his services rather than a primary purpose of training petitioner. Furthermore, the terms of petitioner's employment at MRDC are evidence of a desire to compensate him for services rather than an intention to bestow upon him a fellowship. First, wages paid to petitioner were computed on an hourly wage and taxes were withheld on wages paid. Second, although petitioner had wide discretion in research methods employed, the overall plan and purpose for the research were originated by petitioner's superiors. Third, petitioner received no academic credit for his work at MRDC and his employment was continually conditioned on the satisfactory execution of his duties. While we have no doubt that petitioner derived substantial benefit from his participation in the project, we conclude *424 that this benefit was incidental to the primary compensatory purpose of the payments petitioner received and as such the educational benefit carries no significant weight in a determination as to whether grants received are excludable under section 117. See Willie v. Commissioner, 57 T.C. 383, 389 (1971); Fisher v. Commissioner, 56 T.C. 1201, 1214-1215 (1971). Petitioner argues that participation in practicum experiences was a condition to acquiring his Ph.D. degree. [3] As we have already noted, however, regardless of degree requirements, the payments to petitioner must be in the nature of scholarship or fellowship grant before the section 117 exclusion comes into play. See Reese v. Commissioner, 45 T.C. 407, 413 (1966), affd. 373 F.2d 742 (4th Cir. 1967). Since we have decided that the payments represented compensation for services it is axiomatic that the moneys received by petitioner were not in the nature of scholarship or fellowship grants. *425 Accordingly, we hold that petitioner may not exclude from income payments he received from the University of Minnesota for research performed. The second issue herein focuses on the propriety of petitioner's $ 240 deduction for home office expenses. Section 280A(c) [4] sets out the features of a home office which are required so that expenses associated with its maintenance are properly deductible. The home office must be the employee's principal place of business and its exclusive business use must be for the convenience of the employer. Petitioner's home office was not required by his employer. It therefore seems reasonable to us that maintenance of the home office was for petitioner's convenience rather than for MRDC's convenience. That notion is affirmed by petitioner's statement that he used the office on weekends and late at night after he would return from his travels to different school systems, "too late to go to the office." In any event, it is clear that petitioner's home office was not his principal place of business as petitioner's employer provided him with an office. Accordingly, petitioner's $ 240 deduction for home office expense must be disallowed. *426 To reflect the foregoing and petitioner's concession, Decision will be entered for respondent. Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.↩
2. The total amount of wages paid by the University of Minnesota to petitioner in 1976 was $ 7,925. On his return petitioner excluded the entire amount from gross income but he subsequently conceded that $ 3,360 were properly includable in income as wages received for the teaching of classes at the University of Minnesota.↩
3. Although it appears that participation in practicum experiences was a requirement for acquisition of the Ph.D. degree, petitioner testified that he was not sure whether he would have received his degree if he had not performed research for MRDC. The necessity of petitioner's participation in the MRDC research project is cast further in doubt by the fact that petitioner participated in practicum experiences prior to his research at MRDC. Petitioner's participation in these prior experiences alone may↩ have been sufficient for the acquisition of his Ph.D. degree.
4. The relevant portion of section 280A(c) provides: (c) Exceptions for Certain Business or Rental Use, Limitation on Deductions for Such Use. -- (1) Certain business use. -- Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis -- (A) as the taxpayer's principal place of business, (B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or (C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business. In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer.↩