AMOS AND DOROTHY RAPOPORT, PETITIONERS v. COMMISSIONER
OF INTERNAL REVENUE, RESPONDENT

Docket No. 9934–77.     Filed April 23, 1980.

Amos Rapoport, pro se.
*Scott R. Cox,* for the respondent.

HALL, *Judge:* Respondent determined a $3,707 deficiency in petitioners' 1975 income tax.

The issue presented is whether the research professorship stipend petitioner-husband received from the University of Wisconsin-Milwaukee was a fellowship excludable from gross income under section 117(a),[1] and, if so, whether petitioner-husband was a candidate for a degree within the meaning of section 117(b)(1).

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioners resided in Milwaukee, Wis., when they filed their petition. Dorothy Rapoport is a party solely by virtue of having filed a joint return with her husband. When we refer to petitioner herein we shall be referring to Amos Rapoport.

During 1974 and 1975, petitioner was a professor of architecture and anthropology at the University of Wisconsin-Milwaukee (hereafter referred to as UWM). On October 1, 1974, UWM informed petitioner that he was awarded a UWM research professorship which was to run for 3 years commencing with the 1974–75 academic year. The award carried with it a research fund of $10,000 per year (in lieu of his regular salary); petitioner

---

[1]All section references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

was given reasonable latitude in allocating the funds to support for himself and to payments for research assistants, travel, capital equipment, etc. During 1975, petitioner received $13,975 of this award for his support and was paid an additional amount for research assistants, travel, etc.[2]

The research professorship program was initiated in 1973 in the graduate school of UWM. The graduate school has campus-wide responsibility for encouraging scholarship and research. Only current faculty members could be considered for the research professorship program. The criteria for evaluating candidates for the research professorships were stated as follows:

(1) The most important criterion is outstanding distinction in research and scholarship, coupled with appointment conditions which encourage, or indeed require, the selected professor to enrich the academic life and promote the mission of the University.

(2) The candidate should exhibit an effectiveness as a teacher, particularly in the form of teaching (lecture courses, seminars, laboratories, doctoral supervision) that the candidate is most likely to pursue at UW-Milwaukee.

(3) General intellectual and personal vitality of the candidate are important. He should have the ability to inspire and develop various projects such as the stimulation of innovative academic programs, particularly of a campus-wide nature.

(4) Appropriate consideration will be given to the relation of the candidate's field to the academic mission of UW-Milwaukee.

(5) The recipient must be a faculty member during the period in which he holds the designation of Research Professor.

The university believed that the research professorship could be used as an excellent means of recruiting talented faculty members. The dean of the graduate school noted that "the Research Professorship award can be an excellent means of recognizing the research of creative faculty members currently at UWM."

UWM made retirement contributions and continued to provide all the normal employee fringe benefits to petitioner during the term of the research professorship. In addition, the university continued to withhold Federal and State income taxes and FICA taxes on his grant during the term of the professorship. If petitioner had resigned from UWM's faculty during the time he was receiving the benefits of the research professorship, the

---

[2]Why he received $13,975 instead of only $10,000 in 1975 was not explained in the record.

award would have ceased and no further payments would have been made to petitioner. However, petitioner was not required to remain on campus while his grant continued. He was free to do his research wherever he chose, and to take temporary teaching positions elsewhere.

Petitioner has a master's degree in architecture and has been working on a Ph. D. degree from an English university since 1969. There was no connection between the award made to petitioner and the obtaining of his doctoral degree from the point of view of UWM, the grantor of the award.

The source of funding for the research professorship awards was the State of Wisconsin and the Wisconsin Alumni Research Foundation.

A recipient of the award was required to submit to the dean of the graduate school an annual progress report on his research during the term of the research professorship. Petitioner was free to perform research of his own choosing and generally to spend the award on any research project he saw fit. During the term of the award from UWM, petitioner was not required to enroll in any graduate program at UWM or any other university. Petitioner was relieved of all teaching and other university related duties and was on a leave of absence from UWM while he held the research professorship. For 5 months of the period during which petitioner held the research professorship in 1976, he was employed on salary as a professorial fellow at a university in Israel. During that period, he did not draw any funds from his research professorship award. The rest of the time, he worked on and finished a book, wrote some articles on subjects related to his Ph. D. thesis, traveled to various countries to study settlements in those countries, and attended conferences. He spent some of the award on typing, filing, research assistants, Xeroxing, and the like.

Petitioner was not required to remain a professor at UWM for any period after the termination of the research professorship.

Petitioner's salary as a professor prior to his being awarded the research professorship was $20,000 a year.

At UWM's request, petitioner worked at the university for the month of January 1976. During that period, he was paid his regular salary and was not paid from the research professorship award.

OPINION

Section 117(a)[3] provides that gross income does not include any amount received as a fellowship grant, or amounts received to cover expenses for travel, research, clerical help, or equipment incidental to a fellowship grant and so expended. Section 117(b)(1)[4] provides that in the case of a degree candidate, the exclusion does not cover amounts received as compensation for work performed. Section 117(b)(2)[5] provides that in the case of

---

[3]Sec. 117(a) provides:

(a) GENERAL RULE.—In the case of an individual, gross income does not include—
  (1) any amount received—
    (A) as a scholarship at an educational institution (as defined in section 151(e)(4)), or
    (B) as a fellowship grant,
including the value of contributed services and accommodations; and
  (2) any amount received to cover expenses for—
    (A) travel,
    (B) research,
    (C) clerical help, or
    (D) equipment,
which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.

[4]Sec. 117(b)(1) provides:

(b) LIMITATIONS.—
  (1) INDIVIDUALS WHO ARE CANDIDATES FOR DEGREES.—In the case of an individual who is a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall not apply to that portion of any amount received which represents payment for teaching, research, or other services in the nature of part-time employment required as a condition to receiving the scholarship or the fellowship grant. If teaching, research or other services are required of all candidates (whether or not recipients of scholarships or fellowship grants) for a particular degree as a condition to receiving such degree, such teaching, research, or other services shall not be regarded as part-time employment within the meaning of this paragraph.

[5]Sec. 117(b)(2) provides:

(2) INDIVIDUALS WHO ARE NOT CANDIDATES FOR DEGREES.—In the case of an individual who is not a candidate for a degree at an educational institution (as defined in section 151(e)(4)), subsection (a) shall apply only if the condition in subparagraph (A) is satisfied and then only within the limitations provided in subparagraph (B).
  (A) CONDITIONS FOR EXCLUSION.—The grantor of the scholarship or fellowship grant is—
    (i) an organization described in section 501(c)(3) which is exempt from tax under section 501(a),
    (ii) a foreign government,
    (iii) an international organization, or a binational or multinational educational and cultural foundation or commission created or continued pursuant to the Mutual Educational and Cultural Exchange Act of 1961, or
    (iv) the United States, or an instrumentality or agency thereof, or a State, a territory, or a possession of the United States, or any political subdivision thereof, or the District of Columbia.
  (B) EXTENT OF EXCLUSION.—The amount of the scholarship or fellowship grant excluded under subsection (a)(1) in any taxable year shall be limited to an amount equal to $300 times the number of months for which the recipient received amounts under the scholarship or

individuals who are not candidates for a degree, the grantor of the fellowship must be an organization exempt from tax which is described in section 501(c)(3) or a certain type of governmental organization, and the exclusion is limited to $300 a month for not longer than 36 months.

Only the amount received by petitioner for his support is in issue ($13,975). The amounts expended for expenses are not in issue. Likewise the grantor's qualification under section 117(b)(2)(A) is not questioned. The parties agree that the State of Wisconsin qualifies as a "State * * * of the United States" and the Wisconsin Alumni Research Association is "an organization described in section 501(c)(3) which is exempt from tax under section 501(a)."

Respondent first contends that the $13,975 petitioner received under the research professorship was compensation for petitioner's prior services to UWM.

Section 1.117–3(c), Income Tax Regs., defines a fellowship grant as an amount paid or allowed to or for the benefit of an individual to aid him in the pursuit of study or research. Section 1.117–4, Income Tax Regs., describes certain amounts which are not fellowship grants. Subsection (c) thereof provides that amounts paid as compensation for past, present, or future employment services or for services which are subject to the direct supervision of the grantor, or amounts paid to an individual to enable him to pursue studies or research primarily for the benefit of the grantor, are not fellowship grants. However, the subsection continues, amounts paid to an individual to enable him to pursue research are fellowship grants if the primary purpose of the research is to further the education and training of the recipient in his individual capacity. Neither the fact that the recipient is required to furnish reports of his progress to the grantor, nor the fact that the research may be of some incidental benefit to the grantor shall, of itself, be considered to destroy the essential character of an otherwise qualifying amount as a fellowship grant.

fellowship grant during such taxable year, except that no exclusion shall be allowed under subsection (a) after the recipient has been entitled to exclude under this section for a period of 36 months (whether or not consecutive) amounts received as a scholarship or fellowship grant while not a candidate for a degree at an educational institution (as defined in section 151(e)(4)).

The Supreme Court in *Bingler v. Johnson*, 394 U.S. 741, 751 (1969), upheld the validity of regulations section 1.117–4(c), stating:

Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial *quid pro quo* from the recipients.

In this case, petitioner is an employee of the granting university receiving a research professorship at that university. While an otherwise identical grant to a nonemployee might well constitute a fellowship grant, we have great difficulty in formulating any tax-significant distinctions between the duties and obligations of petitioner while a grantee of the award, and the duties of a research professor at any institution of higher learning. True, petitioner could set his own research goals, but this is a common aspect of the customary academic freedom of a faculty member. Nor does his freedom of choice of locale for conducting the research appear determinative. Aside from the special honor associated with his selection, petitioner's relationship with the university while he pursued his paid research would be difficult to distinguish from that of any paid research professor with his institution. We are not persuaded that Congress intended to permit a university to be able to convert the taxable salary of a research professor to a nontaxable fellowship grant by what in substance amounts to a mere change of the label for his compensation. We do not mean to suggest that the form of the grant resulted in this case from any kind of conscious tax planning by petitioner or UWM, but we do suggest that a holding in favor of petitioner would tend to open the door to obvious conversions of taxable to tax-free income. We need not and do not hold that under no circumstances can an institution make a qualifying fellowship grant to a previously employed recipient. We do, however, believe that a preexisting employment relationship calls for special scrutiny. For a grant to an employee to qualify as a fellowship grant, the terms and conditions of such grant must make it more clearly distinguishable from a mere continuation of the preexisting employment relationship than is the case here. A particularly important factor assisting us in characterizing this as compensation for employment rather than a true fellowship grant is the prerequi-

site of a continuation of petitioner's employment status for the grant to continue.

The pool of candidates for these awards was limited to current professors at UWM. Petitioner continued to receive all the benefits of employment at the university—UWM made retirement contributions and continued to provide normal fringe benefits to petitioner—and the university continued to withhold Federal and State income taxes and FICA taxes during the research professorship. This award is similar to sabbatical leave except that it is not automatically granted after so many years of service. This award is granted only to certain professors whom the university chooses to reward because it feels they will, through their research, "enrich the academic life and promote the mission of the university." The university also looked upon these awards as a recruiting tool to entice high-quality faculty to the university. The dean of the graduate school noted that "the Research Professorship award can be an excellent means of recognizing the research of creative faculty members currently at UWM." Under the criteria for evaluation of candidates for the research professorship, the person who qualifies must exhibit "effectiveness as a teacher" and an ability to stimulate and inspire his students.

One of the primary goals of the research professorship was to encourage the entire faculty to compete for a prize which could be obtained for exceptional services to the university. If the professor performed effectively as a teacher and advanced the academic mission of the university, he might qualify for this award.[6]

Once awarded the research professorship, petitioner had to remain an employee of the university; if petitioner had resigned from the faculty of UWM during the period of the research professorship, no further payments would have been made from the award. The payments to a research professor were a quid pro quo for good services rendered to the university in prior years. Although there was no requirement that petitioner remain an employee of the university after the conclusion of the research professorship, clearly the university hoped this would be the

---

[6]Compare Rev. Rul. 62–188, 1962–2 C.B. 42 (summer research grant to professors held a fellowship) with Rev. Rul. 58–222, 1958–1 C.B. 54 (amount received by professor on sabbatical leave from his employer-university taxable income).

case. Considering all the facts, we conclude that the primary purpose for making the grant was not to further the education and training of the recipient in his individual capacity, although this was probably a byproduct of the award. We conclude that the primary purpose for UWM making these grants was to reward its current faculty for services rendered and hopefully to be rendered and to encourage high-quality professors to seek employment as members of UWM's faculty.

Having concluded that petitioner's grant was taxable income, we do not need to reach respondent's second issue, namely, whether petitioner was a candidate for a degree.

*Decision will be entered under Rule 155.*