WILLIAM C. SELLINGSLOH, JR. and JOYCE P. SELLINGSLOH, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; WILLIAM C. SELLINGSLOH, Jr., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sellingsloh v. Commissioner
Docket Nos. 7304-79, 7305-79.
United States Tax Court
T.C. Memo 1980-403; 1980 Tax Ct. Memo LEXIS 183; 40 T.C.M. (CCH) 1293; T.C.M. (RIA) 80403; September 18, 1980, Filed Arthur Glover, for the petitioners. William P. Hardeman, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Petitioner
Year
Deficiency
William C. Sellingsloh, Jr.
1975
$1,942.76
William C. Sellingsloh, Jr.
1976
3,367.29
and Joyce P. Sellingsloh
These cases have been consolidated for purposes of trial, briefing, and opinion. The only issue in each case is whether amounts paid to petitioner-husband by the Texas Department of Health while he attended the University of Texas may be *184 excluded from income under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners, William C. Sellingsloh, Jr. and Joyce P. Sellingsloh, were residents of Canyon, Tex., at the time of filing their petitions herein. William C. Sellingsloh, Jr. (hereinafter petitioner) is a dentist who has a long employment record with the State of Texas. He was first employed, in 1955, by the Texas Department of Mental Health and Mental Retardation but was transferred to the Texas Department of Health (hereinafter Health Department) in 1969. In 1972, he became director of the dental portion of the Medicaid Early Periodic Screening, Diagnosis, and Treatment Program for Texas. In 1975, the portion of the Program dealing with review of submitted dental care bills was changed from a professional monitoring function to an accounting function. This displeased petitioner, and he began looking for a way out of what he perceived to be a bad situation. Upon learning that state funds were available *185 for employee training, he conferred with his immediate supervisor and gained admission as a Master's degree candidate to the School of Public Health of the University of Texas Medical Science Center (hereinafter U.T.). His supervisor arranged for petitioner to receive a stipend. Petitioner attended U.T. from October 1975 through August 1976. During this period he received $1,625.00 per month (three-fourths of his former $2,166.66 salary) as a stipend from the State of Texas through the Health Department. Medical insurance premiums, life insurance premiums, retirement pay, and social security taxes were withheld pursuant to petitioner's request, but no income tax was withheld. While attending U.T., petitioner was not supervised, submitted no progress reports, and performed no duties for the Health Department. No contract relevant to his study was executed by petitioner and the State of Texas or the Health Department. Believing he had resigned his former position which was filled soon after he left, petitioner began to look for employment when he got his degree in August 1976. He registered with the U.T. Student Placement Service but subsequently accepted a new position with *186 the Health Department. Petitioner's stipend payments were made pursuant to the Texas State Employees Training Act of 1969 and regulatory guidelines promulgated thereunder by the Health Department. Petitioner was not aware of the guidelines when he accepted the stipend to attend U.T. In his statutory notices of deficiency for 1975 and 1976, respondent included in gross income the stipend payments petitioner received in each year. OPINION Section 117 excludes from an individual's gross income any amount received as a scholarship or fellowship grant. [2] In general terms, section 1.117-3, Income Tax Regs., defines a scholarship or fellowship grant as an amount paid or allowed to, or for the benefit of, a student to aid such individual's studies or research. However, scholarships or fellowship grants do not include such amounts if the amounts represent compensation for past, present, or future employment services or are paid primarily for the benefit of the grantor. Sec. 1.117-4(c), Income Tax Regs.
*187 The Supreme Court in Bingler v. Johnson,394 U.S. 741 (1969), upheld the validity of section 1.117-4(c), Income Tax Regs., stating: Here, the definitions supplied by the Regulation clearly are prima facie proper, comporting as they do with the ordinary understanding of "scholarships" and "fellowships" as relatively disinterested, "no-strings" educational grants, with no requirement of any substantial quidproquo from the recipients. [394 U.S. at 751] See also Ussery v. United States,296 F.2d 582 (5th Cir. 1961). In this case, we conclude that the payments received by petitioner were paid primarily as compensation for services or primarily for the benefit of the grantor; therefore, they may not be excluded from gross income under section 117. The stipend petitioner received was paid pursuant to the Texas State Employees Training Act of 1969, Tex. Civ. Stat. Ann. tit. 110A, art. 6252-11(a) (Vernon), and the regulatory guidelines promulgated thereunder by the Health Department. Those guidelines provide in part: II. Objectives: Provide for qualified employees a college education leading to a degree in a field *188 specifically required by the State Health Department, thereby enabling the agency to operate at a higher level of efficiency. III. Program Elements - Requirements
A. Eligibility Requirements - Trainees must be full-time employees of State or local health departments in need of specialized academic training in public health to prepare for careers in public health or to improve their job performance. IV. Administration - Obligations Assumed by Employees Receiving State-Sponsored College Degrees
B. Career Commitment - Acceptance of an accredited traineeship award implies a commitment to a career in public health. Employees sponsored as trainees are considered as continuing in employment of this Department or an affiliated local health department while on training, and their acceptance of a training grant implies their willingness to return to work in the position for which they are being trained. [3]
*189 The above-quoted guidelines establish that petitioner was treated as an employee while he attended U.T. even though he performed no actual services during that time. The purpose of the stipend was to increase the training and value of a Health Department employee, and the expectation that petitioner would use his training to benefit the Health Department was at the heart of the sponsorship. See Ehrhart v. Commissioner,57 T.C. 872 (1972), affd. 470 F.2d 940 (1st Cir. 1973). Thus, we do not have before us the relatively disinterested "no-strings" educational grant envisaged by section 117. Bingler v. Johnson, supra;Ussery v. United States,supra;Rapoport v. Commissioner,74 T.C. 98 (1980); Willie v. Commissioner,57 T.C. 383 (1971); Turem v. Commissioner,54 T.C. 1494 (1970); Haley v. Commissioner,54 T.C. 642 (1970). While in most of the cited cases the taxpayer involved was under a contractual obligation to render post training services to the stipend grantor, that fact is not crucial where, as in the case before us, a clear expectation that *190 the grantee will render such services is present. Ehrhart v. Commissioner,supra;MacDonald v. Commissioner,52 T.C. 386 (1969). See also Brubakken v. Commissioner,67 T.C. 249 (1976). [4] The grantor Health Department expected a substantial quidproquo from petitioner through continued service. Its expected benefits cannot be classified as incidental. See sec. 1.117-4(c)(2), Income Tax Regs.
Petitioner went to great length at trial to explain his reasons for accepting a stipend, noting particularly that he was then unaware of the existing guidelines. However, the grantee's intent is not the relevant inquiry under section 117. The primary purpose test of the regulations is addressed to the purpose for which the payments are made, not the reason they are accepted. See Parr v. United States,469 F.2d 1156 (5th Cir. 1972); *191 Adams v. Commissioner,71 T.C. 477 (1978). Determination of the primary purpose of the payments is a factual question, Steiman v. Commissioner,56 T.C. 1350 (1971), on which petitioner bears the burden of proof. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Given the continuing employee status of petitioner and the clear expectation of the Health Department that petitioner would continue service to it after his training at U.T., we conclude that the primary purpose of the stipend was to compensate petitioner for past and future services, and that it primarily benefited the grantor.[5] None of the usual indicia of a scholarship or fellowship grant such as awarding based on financial need or academic excellence are present, and the fact that petitioner's personal knowledge was enhanced is not enough to make the payments he received excludable. See Parr v. United States,supra;Adams v. Commissioner,supra.
*192 For the above reasons, Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, unless otherwise indicated.↩
2. SEC. 117. SCHOLARSHIPS AND FELLOWSHIP GRANTS. (a) General Rule. -- In the case of an individual, gross income does not include -- (1) any amount received -- (A) as a scholarship at an educational institution (as defined in section 151(e)(4)) or (B) as a fellowship grant, including the value of contributed services and accommodations; and (2) any amount received to cover expenses for -- (A) travel, (B) research, (C) clerical help, or (D) equipment, which are incident to such a scholarship or to a fellowship grant, but only to the extent that the amount is so expended by the recipient.↩
3. These guidelines were promulgated pursuant to section 5 of the Texas State Employees Training Act of 1969 which provides: Each department, institution, and agency shall make regulations concerning the eligibility of its administrators and employees for training and education supported by it and the obligations assumed by the administrators and employees upon receiving this training and education. However, no such regulation shall be made effective, and no public funds shall be expended under such regulation, until the regulation is approved in writing by the Governor. [Tex. Civ. Stat. Ann. tit. 110A, art. 6252-11(a), sec. 5 (Vernon).] The Health Department quidelines received gubernatorial approval by letter dated December 3, 1969.↩
4. While it is not clear that the State of Texas could have obtained reimbursement or other legal redress had petitioner refused to perform services after attending U.T., such service was clearly expected and rises above the "mere hope" in Olick v. Commissioner,73 T.C. 479↩ (1979).
5. Petitioner notes that no income taxes were withheld to indicate that the stipend payments were not compensatory. The Health Department guidelines provided: Deductions for Social Security and retirement are mandatory * * *. At * * * written request * * *, deductions * * * will be made for insurance coverage. No deduction will be made for income taxes; however, it will be the trainee's responsibility to determine taxability of the stipend. Since the guidelines specifically provide that trainees are treated as employees, we draw no conclusions from the withholding practices. See MacDonald v. Commissioner,52 T.C. 386↩ (1969).